```
┌─────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE          │
│           APPROVAL OF THE APPELLATE DIVISION          │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│  Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3.     │
└─────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5373-15T4

JOY SYSTEMS, INC.,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

FIN ASSOCIATES LIMITED
PARTNERSHIP, a New Jersey
Limited Partnership,

    Defendant-Appellant/
    Cross-Respondent,

and

UNITED STATES LAND
RESOURCES, LP, a New
Jersey Limited Partnership,

    Defendant.

           Argued May 22, 2018 — Decided June 7, 2018

           Before Judges Yannotti, Mawla, and DeAlmeida.

           On appeal from Superior Court of New Jersey,
           Law Division, Morris County, Docket No. L-
           1565-14.

           Lawrence S. Berger argued the cause for
           appellant/cross-respondent (Berger &

Bornstein, LLC, attorneys; Robert A. Bornstein and Gregory J. Cannon, on the briefs).

Marshall T. Kizner argued the cause for respondent/cross-appellant (Stark & Stark, attorneys; Marshall T. Kizner, of counsel and on the briefs).

PER CURIAM

In this commercial landlord-tenant dispute, defendant FIN Associates, LP (FIN) appeals from judgments entered in favor of plaintiff Joy Systems, Inc (Joy) on June 29 and August 19, 2016, following a bench trial. Joy cross-appeals from the judgments. We affirm for the reasons expressed in the thorough and comprehensive opinion of Judge Rosemary E. Ramsay.

The following facts are taken from the record. On May 18, 2006, Joy entered into a lease agreement for an industrial warehouse building located on Finderne Avenue in Bridgewater with defendants FIN and United States Land Resources, LP (USLR). The lease was prepared by defendants. Pursuant to the lease, Joy agreed to pay monthly rent of $31,875, and $82,262 as a security deposit. In April 2009, the parties entered into an amendment extending the lease term for two years to May 31, 2011.

Joy's tenancy lasted from May 18, 2006 to May 31, 2011, during which it paid FIN all of the rents due. Pursuant to the lease terms, Joy agreed to "take good care of the . . . [p]remises . . . and . . . keep and maintain the same in good order and condition

2

subject to normal wear and tear." The lease also provided FIN would "perform the work set forth in [e]xhibit B hereto ('[l]andlord's [w]ork')." Exhibit B enumerated eleven items FIN was required to complete or substantially complete before the commencement of the lease. Pertinent to this dispute, FIN agreed the existing overhead doors and dock levelers would "be put in good working order." FIN also agreed to build a 500 square foot lunch room. Upon termination of the lease, Joy was required to "yield . . . the . . . [p]remises 'broom clean' and in the condition in which [Joy] is required to maintain the same during the term pursuant to the provision of this [l]ease and . . . return the . . . [p]remises to [FIN] in the condition it was in as of the date [FIN] complete[d] [l]andlord's [w]ork[.]"

To fulfill its obligations, Joy employed a full-time maintenance worker to maintain the property in accordance with the terms of the lease. Additionally, Joy contracted with a maintenance services company, which performed general maintenance, including on the overhead doors and dock levelers located on the premises. In total, Joy incurred approximately $280,000 to maintain the premises during the term of the lease. This included regularly maintaining the dock levelers and overhead doors, and replacing a dock leveler that failed during the term of the lease.

On December 13, 2010, Joy provided a letter to FIN advising it was vacating the premises. On August 5, 2011, three months after Joy vacated the premises, FIN advised Joy it "was [Joy's] responsibility to put the dock levelers, etc. back into good condition before [Joy] left the building." FIN represented it would return "whatever remains" of the security deposit after Joy performed the work. Four days later, Joy advised FIN it hired a third party contractor who had returned the doors and dock levelers to good working condition. Joy provided a receipt, which evidenced its payment for completion of the work.

The lease required FIN to return the security deposit at the conclusion of the lease, provided Joy had met its obligations under the lease terms. FIN did not return the security deposit. As a result, Joy filed a six-count complaint against FIN and USLR seeking monetary damages for the failure to return the security deposit. The complaint pled the following counts: breach of contract; unjust enrichment; fraud; promissory estoppel; and equitable estoppel. Monetary damages were sought against USLR based on the theory of piercing the corporate veil.[1]

FIN filed an answer and counterclaim. In the counterclaim, FIN alleged Joy breached the lease by failing to surrender the

[1] The judge dismissed the claims against USLR without prejudice. This aspect of the judgment has not been appealed.

premises in broom-clean condition, failing to remove its property from the premises, and causing damage to the premises. FIN further alleged it "suffered damages in excess of [Joy's] security deposit, and therefore, was entitled to recover all costs of the aforementioned repairs, replacements, and debris removal that exceed [Joy's] security deposit."

Joy filed an initial summary judgment motion, which was denied. Prior to trial, Joy filed a second summary judgment motion seeking summary judgment on various grounds, including the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. FIN's opposition did not address Joy's CFA argument. This summary judgment motion was denied as well.

At the start of trial, Joy's counsel argued his client would prove a violation of the CFA. FIN's counsel did not object. During the trial, Joy offered evidence it believed demonstrated FIN's unconscionable commercial practices in violation of the CFA. Following summations, FIN's counsel objected to the assertion of the CFA claim, and moved for a directed verdict to dismiss the CFA claim for lack of notice and evidence supporting the claim. In response, Joy's counsel argued the judge should invoke Rule 4:9-2 to amend Joy's complaint to conform to the evidence adduced at trial.

Judge Ramsay filed a comprehensive written opinion and entered judgment finding as follows: (1) FIN had breached the lease by failing to return the security deposit; (2) Joy's complaint was amended to conform to the evidence adduced at trial to include a CFA claim; (3) as a result, Joy was entitled to recover damages resulting from the CFA violation in the amount of $52,196.04, plus prejudgment interest on the security deposit from August 15, 2011, to the date of the judgment, in the amount of $9305.90, for a total of $61,501.94; (4) Joy was entitled to treble damages under the CFA totaling $184,505.84. The total amount awarded Joy was $266,767.84. This appeal followed.

I.

"Trial court findings are ordinarily not disturbed unless 'they are so wholly unsupportable as to result in a denial of justice,' and are upheld wherever they are 'supported by adequate, substantial and credible evidence.'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988) (quoting Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974)). "Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Because a trial court hears the case, sees and observes the witnesses, and hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Seidman v. Clifton Sav.

Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995).

"The decision to grant or deny . . . a motion [to amend a pleading] lies within the [trial] court's sound discretion." Balthazar v. Atlantic City Med. Ctr., 358 N.J. Super. 13, 27 (App. Div. 2003). "While motions for leave to amend pleadings are to be liberally granted, they nonetheless are best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made." Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994).

"The exercise of this discretion will be interfered with by an appellate tribunal only when the action of the trial court constitutes a clear abuse of that discretion." Salitan v. Magnus, 28 N.J. 20, 26 (1958). A trial court decision will only constitute an abuse of discretion where "the 'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" United States v. Scurry, 193 N.J. 492, 504 (2008) (alterations in original) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

On appeal, FIN argues it was deprived of due process when the judge permitted Joy to amend its pleadings pursuant to Rule 4:9-2, and adjudicated Joy's CFA claim. FIN asserts the CFA claim was not pled and it had no notice Joy would pursue it. FIN argues there was no opportunity to contest application of the CFA before or after trial. FIN further argues the judge should not have awarded treble damages where Joy suffered no ascertainable losses as defined by the CFA. FIN also asserts the judge's award of interest was error because the lease forbade it. FIN argues the damage award was erroneous because it was calculated utilizing the damages FIN asserted in its counterclaim. We address these arguments in turn.

## II.

Rule 4:9-2 states:

> When issues not raised by the pleadings and pretrial order are tried . . . without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings . . . . Such amendment of the pleadings . . . as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will

be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would be prejudicial in maintaining the action or defense upon the merits.

[(emphasis added.)]

The Supreme Court has stated the "broad power of amendment should be liberally exercised at any stage of the proceedings, including on remand after appeal, unless undue prejudice would result." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 457 (1998) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:9-1 (1998)). The opposing party is deemed to be on notice of a claim that has not been formally pled if the issue has been raised in the case prior to trial, even if in a technically deficient manner. See Cuesta v. Classic Wheels, Inc., 358 N.J. Super. 512, 517-18 (App. Div. 2003); see also Winslow v. Corp. Express, Inc., 364 N.J. Super. 128, 140 (App. Div. 2003). The rule should be followed when a legal theory not advanced in the pleadings was fully aired at trial and in post-trial briefs. 68th Street Apts., Inc. v. Lauricella, 142 N.J. Super. 546, 561 (Law Div. 1976).

Judge Ramsay stated:

> Here, neither party identified the CFA in their pretrial submissions. Nor did either party raise any issue regarding the pleading requirements of the CFA or the absence of a claim under the CFA at the commencement of the

A-5373-15T4

trial. Instead, [FIN] waited until the end of the trial to seek dismissal of the claim under the CFA for failure to assert the claim in a pleading and/or failure to present evidence demonstrating a consumer fraud.

Although [FIN] objected to the CFA claim, it did not do so in a timely fashion. The objection was raised at the close of the trial, not in advance of the trial. Thus, the issue was tried without objection because [FIN] did not object to the introduction of evidence or testimony bearing on the issue. . . .

[Joy] asserts that [FIN] w[as] not prejudiced because this case had been litigated as a consumer fraud action from its inception. Prior to trial, the parties moved and/or cross moved for summary judgment. The briefs filed in connection with those motions explicitly presented arguments referring to [Joy's] claim as a consumer fraud claim. The judge who decided the motion stated, the claims included a claim under the [CFA.] Although [FIN] denied any basis for [Joy's CFA] claim, [FIN] did not object to [Joy's] pursuit of the claim based on the failure to plead the claim specifically in the complaint. [FIN] simply asserted that the claim had no merit.

Under these circumstances, [FIN] will not be prejudiced as a result of any amendment of the pleadings to conform to the evidence. [FIN] knew that [Joy] purported to seek relief under the [CFA] when the summary judgment motions were filed, if not earlier. [FIN] did not seek dismissal of the claim at that time or identify any prejudice arising from the late identification of the claim. [FIN] determined that [Joy] would be unable to satisfy its burden of proof on a [CFA] claim and defended the claim on the merits. Therefore, [Joy's] motion to amend the pleadings to conform to the evidence is granted.

We agree FIN had adequate notice of the CFA claim. As the judge noted, FIN failed to object to the CFA claim in a timely fashion. Moreover, FIN was not deprived of due process because it could contest the facts Joy adduced to prove its claim before, during, and after the trial. Thus, FIN was not prejudiced as a result of the judge's amendment of the pleadings to conform to the evidence, and the judge did not abuse her discretion under Rule 4:9-2.

## III.

FIN contends the judge erred in finding a violation of the CFA. Specifically, FIN contends it was an error to conclude the filing of FIN's counterclaim against Joy constituted an unconscionable commercial practice under the CFA.

The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]
>
> [N.J.S.A. 56:8-2.]

A-5373-15T4

"The standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994) (quoting Kugler v. Romain, 58 N.J. 522, 544 (1971)). Omissions consist of "concealment, suppression, or omission of any material fact . . . ." Id. at 19 (quoting N.J.S.A. 56:8-2). Consumer fraud by omission necessarily includes that a defendant's act must be "knowing." Ibid. "[T]he [CFA] is remedial legislation, which 'should be construed liberally in favor of consumers.'" Allen v. V & A Bros., Inc., 208 N.J. 114, 128 (2011) (quoting Cox, 138 N.J. at 15).

As Judge Ramsay noted:

> There are three possible bases for responsibility under the [CFA.] The [CFA] itself declares two general categories of conduct as unlawful. The first relates to that part of the Act which states that "any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation" is an unlawful practice. These are considered affirmative acts. The second general category of unlawful conduct is referred to as acts of omission. Such conduct involves the "knowing concealment, suppression or omission of any material fact." The third basis for responsibility under the [CFA] is found in either specific-situation statutes or administrative regulations enacted to interpret the [CFA] itself. Such statutes and regulations define specific conduct that is prohibited by law.

Judge Ramsay concluded:

> Here, [FIN] drafted the [l]ease, which provided the security deposit "shall be returned . . . provided [Joy] . . . carried out all of the terms, covenants, and conditions, on its part to be performed," including returning the premises "in good order and condition subject to normal wear and tear." [FIN] also expressly agreed to put the existing overhead doors and dock-levelers "in good working order." . . .
>
> [FIN's] subsequent performance or lack thereof relating to its obligations under the [l]ease . . . reflected unconscionable commercial practices. [FIN] failed to respond to [Joy's] request to satisfy [FIN's] obligations to put the existing overhead doors and dock-levelers in good working order. Nonetheless, even though [FIN] did not possess any evidence supporting the position that [it] had satisfied that obligation, i.e., no witnesses possessed first-hand knowledge of the work done on the doors and dock-levelers to satisfy the requirements of [the lease] and no documents were produced to demonstrate the work had been done during [Joy's] occupancy or for its benefit, [FIN] withheld the security deposit at the expiration of the term of the [l]ease.
>
> When [Joy] requested return of the security deposit, [FIN] misrepresented that the reason for the delay related to [FIN's] cash flow issues. When pressed, [FIN] stated the security deposit was not returned because [Joy] allegedly failed to "put the dock-levelers back into good condition." After [Joy] provided documents establishing that Martin Overhead Door had performed work on the doors and dock-levelers, [FIN] still failed to return the security deposit.

13

At or about the same time, [FIN] leased the premises to Brook, which had insisted on the repair and/or replacement of the existing overhead doors and dock-levelers. Brook referred [FIN] to New Jersey Door Works, which was hired to do the work for Brook's benefit. Although [FIN] knew [it] could not establish the condition of the premises that had been provided to [Joy], [FIN] demanded by way of counterclaim the costs and expenses of the repairs made to satisfy the demands of the subsequent tenant. The demand, however, was not limited to the cost of repair of the overhead doors and dock-levelers. [FIN] also demanded payment of demolition and repair costs to remove the lunch room and offices even though the [l]ease did not impose the obligation for removal of those improvements on [Joy]. [FIN] did not simply breach the terms of the [l]ease. [FIN's] evasive and self-serving conduct relating to their performance under the lease evidenced a complete lack of fair dealing and bad faith.

Given these aggravating circumstances, [Joy] has proven by a preponderance of the evidence that [FIN] engaged in unconscionable commercial practices in violation of the CFA. To recover, however, [Joy] must establish more than the unlawful conduct of [FIN]. [Joy] must also demonstrate an ascertainable loss on the part of [Joy]; and a causal relationship between [FIN'S] unlawful conduct and [Joy's] ascertainable loss. N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div. 2003).

[Joy's] ascertainable loss includes the amount of the interest on the security deposit from August 15, 2011, through the present. In addition, in Cox, the New Jersey Supreme Court concluded that "an improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the [CFA], because the consumer is not obligated to pay an

indebtedness arising out of conduct that violates the [CFA]." Cox, 138 N.J. at 23.

Here, [FIN] asserted an improper debt against [Joy] when [FIN] sought as damages the costs and expenses associated with repairing and/or improving the premises to satisfy [FIN's] obligation to a subsequent tenant. Unlike Cox, in this action, these losses occurred after [FIN] had engaged in the conduct that violated the [CFA]. [FIN] already had failed to perform their obligations under the [l]ease with respect to putting the existing overhead doors and dock-levelers in good working order, had failed to communicate effectively the work that [Joy] needed to complete at the expiration of the [l]ease, had agreed to repair and/or replace doors and dock-levelers and demolish the lunch room and offices for the benefit of a subsequent tenant, and had misled [Joy] regarding the reason for not returning the security deposit. When plaintiff refused to succumb to [FIN's] evasive tactics, [FIN] asserted a debt arising out of their unconscionable commercial practices, i.e., the amounts incurred to satisfy [FIN's] obligations to a subsequent tenant.

We agree with Judge Ramsay's determination FIN asserted an improper debt when it pursued its counterclaim, which constituted an unconscionable commercial practice in violation of the CFA. Additionally, we agree with the judge that Joy's ascertainable loss derived from FIN's unconscionable commercial practice of fraudulently retaining the security deposit and asserting a debt against Joy for a sum greater than the security deposit.

15                                                          A-5373-15T4

IV.

FIN contends the judge's award of interest as part of the judgment violated the lease, which expressly excluded interest payable on the security deposit. Thus, FIN contends there could not have been an ascertainable loss based on interest on the security deposit.

"In general, we review awards of interest and the calculation of those awards under an abuse of discretion standard." Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 91 (App. Div. 2013) (citing Baker v. Nat'l State Bank, 353 N.J. Super. 145, 177 (App. Div. 2002)). "A reviewing court must not disturb an award of prejudgment interest unless the trial judge's decision represents 'a manifest denial of justice.'" Id. at 91-92 (quoting Musto v. Vidas, 333 N.J. Super. 52, 74 (App. Div. 2000)).

Judge Ramsay concluded:

> [FIN] asserted that [Joy] owed (1) $36,020.74 for services relating to the repair and replacement of the overhead doors and dock-levelers, and (2) $16,175.30 for the demolition/renovation of the lunch room and offices, for a total of $52,196.04.
>
> Thus, [Joy] is entitled to recover return of the security deposit in the amount of $82,262.00 as damages for [FIN's] breach of the [l]ease. In addition, [Joy] is entitled to recover damages resulting from [FIN's] violation of the [CFA] in the amount of $52,196.04 plus the interest on the security deposit from August 15, 2011, to the present,

16

i.e., $9,305.90, for a total of $61,501.94. Although both the breach of contract and [CFA] claim justify recovery of the interest on the security deposit, [Joy] is limited to a single recovery for that loss.

With respect to the losses arising from the violation of the [CFA], N.J.S.A. 56:8-19 requires that the amount of those losses must be trebled. Thus, damages for the violation of the [CFA] total $184,505.84. In addition, [Joy] is entitled to recover reasonable attorneys' fees. . . .

. . . .

For [FIN's] breach of contract, [Joy] is entitled to recover the security deposit in the amount of $82,262.00; for [FIN's] violation of the [CFA], [Joy] is entitled to recover $184,505.84, for a total judgment in the amount of $266,767.84, subject to [Joy's] application for attorneys' fees and costs.

[(emphasis added).]

As we noted, the lease stated "[t]he [s]ecurity [d]eposit shall be returned to [Joy] without interest, after the time fixed as the expiration of the term herein, . . . provided [Joy] has fully, faithfully and timely carried out all of the terms, covenants and conditions on its part to be performed." This provision of the lease contemplated the return of the security deposit without interest in the normal course at the conclusion of the lease. We do not read this provision as depriving Joy of interest as part of a CFA damage award where the security deposit was wrongfully withheld. For these reasons, it was not an abuse

17

of discretion for the trial judge to award interest on the wrongfully withheld security deposit as an ascertainable loss, and treble the amount pursuant to the CFA.

V.

Finally, in its cross-appeal Joy argues if we reverse the CFA award, we should address Joy's claim for punitive damages, which the judge denied because she determined treble damages under the CFA were a form of punitive damages. We do not reach this argument because we have upheld Judge Ramsay's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5373-15T4