**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3809-22

IN THE MATTER OF COUNTY
OF ESSEX AND FOP LODGE
106, COUNTY OF ESSEX AND
PBA LOCAL 382, COUNTY OF
ESSEX AND PBA LOCAL 183,
and COUNTY OF ESSEX AND
PBA LOCAL 183A.

_____

Argued April 16, 2024 – Decided May 7, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from the New Jersey Public Employment Relations Commission.

Joseph Michael Hannon argued the cause for appellant County of Essex (Genova Burns, LLC, attorneys; Joseph Michael Hannon and Leonard Salvatore Spinelli, on the briefs).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; Frank C. Kanther, on the brief).

Valerie Palma DeLuisi argued the cause for respondents FOP Lodge 106, PBA Local 183, and PBA Local 183A (Law Offices of Nicholas J. Palma, Esq.,

PC, attorneys for respondents PBA Local 183 and PBA Local 183A; C. Elston & Associates, LLC, attorneys for respondent FOP Lodge 106; Law Offices of Steven A. Varano, PC, attorneys for respondent PBA Local 382; Valerie Palma DeLuisi, and Catherine Mary Elston, of counsel and on the joint brief; Albert Seibert, and Douglas J. Wisneiski, on the joint brief).

PER CURIAM

This appeal concerns the latest chapter of unfair labor practice charges initially asserted by four police unions against the County of Essex for unilaterally shifting the health insurance of all county employees from a private carrier to the State Health Benefits Program (SHBP) without engaging in good-faith negotiations with those unions. By leave granted, the County appeals from a June 29, 2023 final Public Employment Relations Commission (PERC) decision granting summary judgment in favor of FOP Lodge 106 (FOP 106) and PBA Local 382 (PBA 382).[1] PERC adopted the factual findings of a hearing examiner, with one modification that is not germane to this appeal. PERC

---

[1] After the parties filed their appellate briefs, the County and PBA 382 executed a stipulation of dismissal regarding PBA 382's unfair practice claims. Previously, in its June 29, 2023 decision, PERC denied the motions and cross-motions for summary judgment regarding the unfair practice claims asserted by PBA Local 183 (PBA 183) and PBA Local 183A (PBA 183A). The County, PBA 183, and PBA 183A did not move for leave to appeal from those denials. Accordingly, we confine our review to the contentions between the County and FOP 106, but we discuss the three other unions where applicable.

concluded the County engaged in the unfair practices alleged by both unions. PERC also accepted the hearing examiner's recommendation to impose a reimbursement remedy.

On appeal, the County raises four arguments, primarily challenging the remedy imposed. In essence, the County contends PERC's remedy is contrary to the SHBP's plan design, fails to offset employees' damages against increased benefits under the new plan, and violates the County's right to due process because the unions did not request a remedy on summary judgment. In its final argument, the County asserts summary judgment was premature because there were material issues of fact concerning the interpretation of the parties' collective negotiations agreements (CNA). Having considered the County's contentions in view of the governing legal principles and the record before PERC, we are unpersuaded and affirm PERC's final decision granting summary judgment to FOP 106.

## I. Statutory & Procedural Background

To give context to the issues presented on appeal, we summarize the facts and procedural history in view of the governing statutory framework.

Under the SHBP Act, N.J.S.A. 52:14-17.25 to -17.46, the SHBP offers health insurance to qualified State and local employees, retirees, and eligible

3

dependents by providing coverage through contracts negotiated between the State Health Benefits Commission (SHBC) and insurance carriers. N.J.S.A. 52:14-17.28(a). When a local government employer elects to participate in the SHBP, it becomes "subject to and in accordance with the rules and regulations of the [SHBC]." N.J.S.A. 52:14-17.37(a). The SHBP's benefits and requirements are intended to apply uniformly to all enrolled employees. See N.J. Sch. Bds. Ass'n v. State Health Benefits Comm., 183 N.J. Super. 215, 223 n.4 (App. Div. 1982) (citing N.J.S.A. 40A:10-25). The SHBP's regulations grant some adjudicatory authority to the SHBC, mainly to decide disputes between participants and insurance carriers. N.J.A.C. 17:9-1.3(a).

In 2011, the Legislature created the Plan Design Committee (PDC), vesting it with "the exclusive authority to design state health benefits plans." Rosenstein v. State, Dep't of Treasury, Div. of Pensions & Benefits, 438 N.J. Super. 491, 494 (App. Div. 2014). The PDC establishes the components of the SHBP's offered plans, which the PDC may create, modify, or terminate in its discretion. N.J.S.A. 52:14-17.27(b). The PDC has "the sole discretion to set the amounts for maximums, co[-payments], deductibles, and other such participant costs for all plans in the program." N.J.S.A. 52:14-17.29(J). Accordingly, a participating employer cannot alter the healthcare plans offered

by the SHBP "through collective negotiations between [the employer] and its employees." Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 417 (App. Div. 2014).

PERC has been empowered by the Legislature to make policy and establish rules and regulations regarding employer-employee relations, including dispute settlement, through the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -64. See In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 327-28 (1989); N.J.S.A. 34:13A-5.2. Under N.J.S.A. 34:13A-5.4(c), PERC has "exclusive power . . . to prevent anyone from engaging in any unfair practice listed" in subsections (a) and (b) of the statute.

If, after receiving evidence, PERC determines a charged party has engaged in an unfair practice, it shall issue an order "requiring such party to cease and desist from such unfair practice, and to take such reasonable affirmative action as will effectuate the policies of [the EERA]." Ibid. This grant of "broad remedial authority," Galloway Twp. Bd. of Educ. v. Galloway Twp. Ass'n of Educ. Secretaries (Galloway I), 78 N.J. 1, 9 (1978), "indicate[s] not only the responsibility and trust accorded to PERC, but also a high degree of confidence in the ability of PERC to use expertise and knowledge of

circumstances and dynamics that are typical or unique to the realm of employer-employee relations in the public sector." Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. at 328.

FOP 106 is the majority union representative of Essex County Department of Corrections' sergeants, lieutenants, and captains. The CNA between FOP 106 and the County initially was effective from January 1, 2011 through December 31, 2013, and later extended through December 31, 2017.

Entitled "Health Insurance and Section 125 Cafeteria Plan," Article 21 of the CNA provided "existing Hospitalization, Medical-Surgical and Major Medical Insurance Benefits shall be paid for by the County," except as set forth in another provision. The provision continued: "The County reserves the right to select the insurance carrier who shall provide such benefits as long as the benefits are not less than those now provided by the County." (Emphasis added). The CNA also contained a "Retention of Existing Benefits" clause, which stated the rights, privileges, and benefits enjoyed by union employees "shall be maintained and continued by the County during the term of [the a]greement until the ratification/approval of a successor agreement, notwithstanding any statute, law, ordinance, precedent or ruling by a [c]ourt or [s]tate agency."

6

The County renews its health insurance benefits contracts on an annual basis. For the year 2016, the County contracted with Aetna to provide health insurance coverage to all its employees. However, based on Aetna's high renewal costs over the years, culminating in an increase of $10 million for the 2016 contract, the County anticipated a further increase of approximately $19 million for 2017. Accordingly, during 2016, the County's insurance consultant solicited quotes from other carriers, including the SHBP.

In January, March, and June 2016, the County held three "Labor Roundtable" meetings with its insurance consultant and representatives of the County's twenty-six union negotiations units. Utilizing PowerPoint presentations, the insurance consultant compared the costs and benefits between Aetna's and the SHBP's plans. The attendees were notified that, if the County sought to join the SHBP for 2017, adoption of a resolution was necessary by October 1, 2016.

By September 8, 2016, the County received updated premium rates for 2017 from the SHBP and Aetna, and calculated it would save more than $9.7 million for that year by changing insurance carriers. During another Labor Roundtable on September 13, the County presented this additional information to union representatives. Between September 16 and 22, the County held five

"information sessions," seeking consent from the unions to switch carriers. The unions were given a September 23, 2016 deadline to review the information, consult with their members, and allow a membership vote.

On September 26, 2016, FOP 106 provided the County an offer outlining its prerequisites for consenting to the proposed change. Two days later, the County rejected FOP 106's proposal and adopted Resolution 31, switching the health insurance carrier for all County employees from Aetna to the SHBP, effective January 1, 2017.

On October 11, 2016, the County offered all twenty-six negotiations units extensions of their CNAs, stating the level of health insurance benefits provided through the SHBP beginning January 1, 2017, would remain the same during that calendar year. The County further stated if the benefits provided changed in 2018, and the parties mutually agreed the change was not equal to or greater than the benefits provided in 2017, the County would negotiate in good faith regarding any action undertaken. FOP 106 and the three other unions involved in this litigation refused the County's offer; the remaining twenty-two unions agreed to the change in carriers.

Thereafter, FOP and the three other unions filed unfair labor practice charges with PERC against the County, alleging violations of the EERA.

A-3809-22

Specifically, FOP 106 and the three other unions claimed the County violated N.J.S.A. 34:13A-5.4(a)(1) and (5),[2] by unilaterally changing the health insurance benefits provided to their member employees in a manner that reduced those benefits. In their addendum to the unfair labor charge, the unions sought a remedy, directing the County to: "cease and desist" from violating the EERA by making the transfer to the SHBP, "[r]einstate the [Aetna] insurance benefit plan," and "take and/or refrain from taking such other action as PERC deems to be fair and just."

To aid in the resolution of the labor dispute before PERC, the unions sought a declaratory ruling from the SHBC to answer four questions pertaining to their unfair practice allegations. Of particular relevance here, in Question 3 the unions inquired whether "the County, as [a] participant in the SHBP" could "reimburse its employees for incremental costs arising from changes in negotiated levels of health benefits."

---

[2] These provisions proscribe certain actions by public employers: "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by [the EERA]," N.J.S.A. 34:13A-5.4(a)(1); and "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative," N.J.S.A. 34:13A-5.4(a)(5).

A-3809-22

The SHBC issued its ruling on all four questions in September 2017. As to Question 3, the SHBC stated "a local employer may not reimburse any out[-]of[-]pocket costs that are part of the design of an SHBP plan." The SHBC elaborated: "[R]eimbursing incremental costs alters the participant's out[-]of[-]pocket costs in the SHBP, and these costs are established plan by plan by the PDC." Noting the PDC "exercised its jurisdiction and established co-payments, which are a plan component, for each plan offered," the SHBC concluded "the [SHBC] has no authority to modify these plan components and cannot permit a participating employer to do so either."

Recognizing "disputes" could arise between participating employers and employees as to whether a particular cost "complies with the terms of a [CNA]," the SHBC declared "modification of co-payments established by the SHBP is unlawful and a reimbursement of these costs would negatively impact the Program." The SHBC cited our Supreme Court's decision in Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190 (2013), and stated "delayed reimbursements" provided to employees would not affect those employees' utilization of SHBP plans. Noting the question of whether the County's participation in the SHBP violated the EERA was pending before PERC, the SHBC was "confident" that "PERC can fashion an appropriate

remedy that does not infringe on the SHBP plan design or offend the public policies underlying the [SHBP]."

FOP 106 and the three other unions appealed, and we affirmed. Essex Cnty. Sheriff's Officers PBA Loc. 183 v. Dep't of the Treasury, Div. of Pensions & Benefits, State Health Benefits Comm'n, No. A-1228-17 (App. Div. June 14, 2019) (slip op. at 26). Citing the SHBC's confidence in PERC's ability to issue an appropriate remedy on an unfair practice charge, we rejected the unions' argument that the SHBC's ruling on Question 3 deprived them the possibility of a "make-whole" remedy before PERC. Id. at 24-25. But we declined the unions' invitation to issue "an advisory opinion about whether any fair remedies – other than dollar-for-dollar reimbursements to individual employees – could be issued in the future by PERC in this matter." Id. at 25. We concluded: "The questions of remedy must be decided in the first instance by PERC." Ibid.

Thereafter, PERC's Director of Unfair Practices issued complaints and notices of pre-hearings on the unions' charges, which were consolidated. The County filed an answer, denying the unions' allegations. Cross-motions for summary judgment followed.

To support their motion, the unions submitted certifications and other information detailing the negative impact on their members from the change in

11

carriers from Aetna to the SHBP.  For example, FOP 106 asserted the out-of-pocket costs for its unit employees increased by $6,000, with doctor office co-payments doubling and emergency room co-payments tripling.  Other FOP 106 officers experienced losses of coverage for prescription drugs Aetna had covered.  PBA 382 disclosed similar increases.

In its submission, the County acknowledged the change in carriers caused union employees to incur additional costs.  However, the County argued those costs were offset by reductions in premium contributions, lower out-of-network deductibles, and other beneficial changes.  The County further claimed although it held information sessions for its employees and sought the unions' consent to change to the SHBP, "their agreement was not required."  The County emphasized the SHBP "was the only financially viable option for a change in health insurance carriers to avoid" Aetna's rising costs, and the deadline to do so was October 1, 2016 to effectuate "the full benefit of the cost avoidance for health insurance" for 2017.

The cross-motions were referred to a hearing examiner for decision.  See N.J.A.C. 19:14-4.8(a).  In March 2023, the examiner issued a report and recommended decision.  In granting summary judgment to FOP 106, the examiner determined the County failed to negotiate in good faith before

changing carriers and reduced the employees' level of health benefits without the union's consent.

Specifically, the examiner found the change to the SHBP increased prescription drug costs and co-payments for several services and reduced or removed coverage for multiple types of care. According to the examiner, "[t]hese changes in benefits were prohibited by the clear terms of" FOP 106's CNA. She further found the County's meetings and information sessions did not constitute good-faith negotiations as required by N.J.S.A. 34:13A-5.4(a)(5). In reaching her conclusion, the examiner reasoned there was no "meaningful dialogue or exchange of proposals" between the parties and the County effectively adopted a "take it or leave it" attitude toward the unions' counteroffers.

Although the hearing examiner recognized the unions did not "seek to address a calculation of damages/arguments over possible remedies," she found their submissions "d[id] not foreclose any make-whole remedy for a violation of the [EERA]." The examiner thus recommended PERC order the County to "[i]mmediately reimburse" all FOP 106 and PBA 382 employees "for any costs or losses incurred since January 1, 2017 as a result of [the] change in health insurance carriers from Aetna to the [SHBP]." The examiner found support for

13

this remedy in several prior PERC decisions, which issued similar orders following a public employer's "unilateral change in health benefits."

The County timely filed exceptions to the hearing examiner's decision, see N.J.A.C. 19:14-7.3, asserting it was deprived due process because the examiner ordered a remedy when the unions did not seek one in their moving papers. The County further argued the recommended reimbursement remedy violated SHBP regulations by interfering with the SHBP's "plan design" and ordering a "make-whole, 'dollar-for-dollar' reimbursement at point of service." The County also claimed the examiner ignored genuine issues of material fact as to the interpretation of the parties' CNAs.

In its June 29, 2023 decision, PERC agreed that the County unilaterally changed its employees' health insurance to the SHBP without negotiating in good faith with those unions. PERC found the County's Labor Roundtable meetings and "information sessions" did not include a "meaningful dialogue and/or exchange of proposals about a proposed change to negotiable terms and conditions of employment," as required to satisfy statutory bargaining requirements.

PERC further found the level of health benefits enjoyed by FOP 106 and PBA 382 members "decreased in multiple ways as a result of the change to the

SHBP." Citing its prior decisions, PERC rejected the County's argument that lower premiums should "offset" any negative changes to the employees' insurance, stating that an "employer may not unilaterally determine which [insurance] plan is better 'on balance' . . . where the parties' agreement does not give it that right."

Turning to the County's exceptions to the proposed remedy, PERC acknowledged "the preferred procedure" would have encompassed the hearing examiner's request for supplemental briefing from the parties. Nonetheless, PERC noted although the unions did not seek a specific remedy in their moving papers, they did so in their underlying unfair practice charges. Further, because the County raised the issue in its exceptions, PERC concluded the employer had "a full opportunity to oppose" the proposed remedy and was not deprived due process.

Addressing the merits of the proposed remedy, PERC found the examiner's proposal "[wa]s supported by [PERC] precedent and [wa]s the least disruptive remedy to address the County's violation of the Act." PERC explained:

> Rather than ordering a strict return to the status quo ante, which might require returning all County employees to their previous health plan in addition to financial reimbursement, the establishment of a health

> reimbursement fund does not order the County to change health insurance carriers or require it to administer a separate health insurance plan for the affected units.

In so finding, PERC rejected the County's argument that reimbursement violated SHBP regulations or uniformity requirements. PERC noted SHBP co-payments and deductibles charged at the "point of service" could not be changed. However, because employees were required to pay to their medical providers full co-payments and other costs set by the SHBP, PERC concluded subsequent reimbursement of the difference between those payments and the amounts that would have been paid under the Aetna plans would not affect the SHBP's usage or funding. PERC also found reimbursement was appropriate because the remedy was issued "more than six years after" the change to the SHBP. Thus, employees had been paying the higher costs to medical providers for that duration without knowing PERC's decision and, as such, there was little risk the employees were over-utilizing medical services, which could otherwise affect the SHBP.

Ultimately, PERC concluded the County committed unfair labor practices by altering FOP 106 and PBA 382 employees' health insurance without engaging in good-faith negotiations with their majority representatives. PERC ordered the County to establish a reimbursement fund to "immediately" reimburse all

16

employees in those two unions "for any costs or losses incurred since January 1, 2017" as a result of the change. To implement this remedy, employees are required to submit claims to their majority representatives who, in turn, submit the claims to the County. Disputes concerning claims are "reviewable in binding arbitration." PERC ordered the reimbursement obligation continued "until such time as the parties negotiate and agree to a different level of health benefits or have otherwise settled the matter." This appeal followed.

## II. Standards of Review

Our scope of review of an agency's decision is circumscribed. See e.g., Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). "Our inquiries are limited to: (1) whether the agency followed the law; (2) whether the agency's decision is supported by substantial evidence in the record; and (3) whether in applying the law to the facts, the agency reached a supportable conclusion." In re County of Atlantic, 445 N.J. Super. 1, 11 (App. Div. 2016).

Moreover, our Supreme Court has long recognized the legislative "mandate[] that judicial review of PERC's decisions and orders shall be of a very limited scope." Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n (Galloway II), 78 N.J. 25, 35 (1978); see also Commc'ns Workers of Am., Loc. 1034 v. N.J. State Policemen's Benevolent Ass'n, Loc. 203, 412 N.J. Super. 286,

291 (App. Div. 2010) (stating "PERC is charged with administering the [EERA], and its interpretation of the Act is entitled to substantial deference"). "In the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by PERC." City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998). Accordingly, we defer to PERC's expertise in public sector employer-employee relations. Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. at 328.

By contrast, if PERC's interpretation of the EERA is overreaching and "outside the agency's charge," "no special deference" is owed. Township of Franklin v. Franklin Twp. PBA Loc. 154, 424 N.J. Super. 369, 378 (App. Div. 2012); see also In re Camden Cnty. Prosecutor, 394 N.J. Super. 15, 23 (App. Div. 2007). We exercise de novo review of a decision on summary judgment, see Conforti v. County of Ocean, 255 N.J. 142, 162 (2023), and the interpretation of a statute, see Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

III. Summary Judgment

We first consider the County's argument that certain provisions in its CNA with FOP 106 created ambiguities that raised issues of fact precluding summary

18

judgment.  Those provisions include:  "Pre-Admission Review"; "Second Surgical Opinions"; "Twenty (20%) Percent Co-Pay for Dependent Coverage, only"; and "the Drug Prescription Plan," with certain co-payments.  Because the County maintained these benefits when it switched coverage, as required under the CNA, it contends "PERC rushed to grant summary judgment purely on the grounds that some benefits were lower under the SHBP than under the Aetna plan, while seemingly ignoring the reality that other benefits were richer for employees and cost the employees significantly less."  The County thus argues a testimonial hearing was required to determine "the meaning of the negotiated standard."  We disagree.

Motions for summary judgment in PERC proceedings are governed by N.J.A.C. 19:14-4.8, and may be granted where "there exists no genuine issue of material fact and that the movant or cross-movant is entitled to its requested relief as a matter of law," N.J.A.C. 19:14-4.8(e).  This same standard applies to summary judgment motions before the trial court in a civil proceeding.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Accordingly, although all reasonable inferences must be drawn in favor of the non-moving party, that party must present sufficient evidence to demonstrate a genuine issue of material fact.  See Cortez v. Gindhart, 435 N.J.

19                                                            A-3809-22

Super. 589, 605 (App. Div. 2014). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. AsSeenOnTV.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

In the present matter, the County goes to great lengths in an attempt to find ambiguity in its CNA with FOP 106 when the agreement plainly states: "The County reserves the right to select the insurance carrier who shall provide such benefits as long as the benefits are not less than those now provided by the County." The County's contention that its ambiguity argument hinges on facts that must be developed at an evidentiary hearing ignores general contract principles. "[I]nterpretation and construction of a contract is a matter of law," Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 190 (App. Div. 2008), and may be addressed on a motion for summary judgment, Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008). This analysis includes the question of whether a term in a contract is ambiguous or clear. Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997).

When deciding whether there is ambiguity, a court must give contractual language its plain and ordinary meaning. Ibid. An ambiguity exists "if the terms

20

of the contract are susceptible to at least two reasonable alternative interpretations." Ibid. "Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole." Republic Bus. Credit Corp. v. Camhe-Marcille, 381 N.J. Super. 563, 569 (App. Div. 2005) (quoting Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 426 (1956)). "A 'court should not torture the language of [a contract] to create ambiguity.'" Nester, 301 N.J. Super. at 210 (alteration in original) (quoting Stiefel v. Bayly, Martin & Fay of Conn., Inc., 242 N.J. Super. 643, 651 (1990)).

"[U]nambiguous contracts are to be enforced as written," and a court should not rewrite a contract "in order to provide a better bargain than contained in [its] writing." Grow Co., 403 N.J. Super. at 464. Where an agreement is ambiguous, a court must consider the intent of the parties, as evinced by not only the contract's express terms, but also surrounding circumstances and the contract's underlying purpose. In re County of Atlantic, 230 N.J. 237, 255 (2017). Other considerations include "custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Winslow v. Corp. Express, Inc., 364 N.J. Super. 128, 138 (App. Div. 2003) (quoting Kearny PBA Loc. #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). Nonetheless, "[a] party that uses unambiguous terms in a contract cannot be relieved from the language

simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning."  Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002).

Ultimately, the court's function "is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Owens v. Press Publ'g Co., 20 N.J. 537, 543 (1956)).  For a CNA, such as the one at issue here, that purpose "is a common understanding on the terms and conditions of labor."  Ibid.

Against these seminal principles, we are satisfied the CNA unambiguously stated the County was required to maintain all aspects of health insurance benefits at the same or a greater level for the duration of the contract. That the agreement also mentioned a few specific benefits does not render the more general language in Article 21 referring to all "existing Hospitalization, Medical-Surgical and Major Medical Insurance Benefits" nugatory.  Indeed, the CNA contained no qualifying terms that the narrower provisions cited by the County were the only benefits it must maintain under the same level of coverage.

Because there were no genuine issues of material fact regarding the CNA's language, we conclude the matter was ripe for summary judgment. Pursuant to the agreement's plain terms, PERC properly concluded the County's change in carriers violated its CNA with FOP 106. We affirm for the sound reasons expressed in the agency's final decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D).

We add only the County does not expressly assert it engaged in good-faith negotiations. Rather the focus of its arguments on appeal is whether the change to the SHBP violated the CNA and, if so, whether PERC's ordered remedy was appropriate.

In the interest of completeness, however, we note PERC and New Jersey courts have found violations of N.J.S.A. 34:13A-5.4(a)(5) where an employer held "information sessions" during which no true negotiation between the parties took place and where the employer entertained no counterproposals. See Galloway I, 78 N.J. at 6-8 (finding an unfair practice where the employer announced a unilateral reduction in employees' work hours while negotiations on other terms of employment were ongoing); In re Hamilton Twp. Bd. of Educ., P.E.R.C. No. 87-18, 12 N.J.P.E.R. ¶ 17276, 1986 NJ PERC LEXIS 341 (1986) (finding a violation of N.J.S.A. 34:13A-5.4(a)(5) where employer held one

ninety-minute session during which it evinced no intention to alter its position or consider counterproposals); In re Borough of Metuchen, P.E.R.C. No. 84-91, 10 N.J.P.E.R. ¶ 15065, 1984 NJ PERC LEXIS 124 (1984) (finding a violation of N.J.S.A. 34:13A-5.4(a)(5) where unions were not given a chance to reject new carrier and were invited to a "presentation" by two potential carriers "only as a matter of courtesy").

The process of negotiation "should ideally lead to communication and understanding between the parties rather than itself becoming the subject of dispute." Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. at 338. Thus, while an employer "may adhere firmly to a good-faith negotiation position," ibid., unilateral termination of a benefit previously provided to employees, without any meaningful discussion or back-and-forth between the employer and employee representatives, may constitute an unfair labor practice, id. at 336-38. Good-faith negotiations were not undertaken here.

## IV.  Remedy

### A.  Due Process

We first consider the County's procedural argument that PERC erroneously imposed a remedy, absent a specific request by FOP 106 in its moving papers.  See N.J.A.C. 19:14-4.3 (requiring the movant in unfair labor

24

practice proceedings before PERC to state the "relief sought" in its written motion). The County argues FOP 106's procedural gaffe precluded summary judgment. We are not persuaded.

At a minimum, whether analyzed under the Federal or State Constitution, due process requires adequate notice and an opportunity to be heard. First Resol. Inv. Corp. v. Seker, 171 N.J. 502, 513-14 (2002). "Notice" must "defin[e] the issues" and provide "an adequate opportunity to prepare and respond." McKewon-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993). An "opportunity to be heard" must be "at a meaningful time and in a meaningful manner." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). However, not every justiciable controversy requires a trial-type hearing to satisfy the demands of due process. In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 466-67 (2006). Rather, "due process is a flexible and fact-sensitive concept." Ibid.

Initially, we agree with PERC's acknowledgement that the hearing examiner should have requested full briefing before proposing a remedy. But we also agree with PERC's finding that the County was on notice the unions sought recourse and remedy via the addendum to the unfair practice charges,

which requested an order that the County "take and/or refrain from taking such other action as PERC deems to be fair and just."

More persuasively, however, the County was afforded a full opportunity to argue the issue of remedy in its exceptions to the examiner's recommendation, see N.J.A.C. 19:14-7.3, and did so. Indeed PERC, the decision-making body in this matter, fully considered the County's exceptions. In her report and recommendation, see N.J.A.C. 19:14-7.1, the examiner placed the County on notice that the suggested remedy involved a reimbursement fund. PERC was free to "adopt, reject or modify" any aspect of the report following submission of exceptions when reaching its final decision. N.J.A.C. 19:14-8.1(a). The County had notice and an opportunity to be heard before PERC imposed the challenged remedy; there was no deprivation of due process here.

## B.  The Reimbursement Remedy

We turn to the County's substantive arguments that the remedy was unlawful. The County argues the issue of whether union employees may be reimbursed for out-of-pocket healthcare costs should have been deferred to the SHBC, which previously concluded such reimbursement would constitute an unauthorized modification of the SHBP plan. The County further claims PERC's remedy should have included an "offset" to account for the improved benefits,

such as lower premiums, which were realized through the change in carriers. The County's arguments are unavailing.

Generally, PERC "possesses the authority to order that a party found to have violated the [EERA] make the affected employees whole for their losses sustained by reason of the commission of an unfair practice in violation of N.J.S.A. 34:13A-5.4(a) and (b)." Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. at 336 (quoting Galloway I, 78 N.J. at 16). For example, PERC has ordered employers to reimburse employees for actual costs incurred, which resulted from changes in health benefits caused by a unilateral change in carriers. See In re Lakeland Reg'l Bd. of Educ., P.E.R.C. No. 2014-38, 40 N.J.P.E.R. ¶ 107, 2013 NJ PERC LEXIS 127, at *17 (2013) (ordering the creation of a reimbursement fund where the employer unilaterally changed employees' insurance to the School Employees Health Benefits Program); In re Township of Pennsauken, P.E.R.C. No. 88-53, 14 N.J.P.E.R. ¶ 19020, 1987 NJ PERC LEXIS 571, at *10 (1987) (ordering reimbursement for losses incurred due to change in carrier where the employer did not request the employee organizations' consent); Borough of Metuchen, 1984 NJ PERC LEXIS 124, at *15 (ordering reimbursement for additional costs incurred by employees relative to those charged under old insurance plans ordered where employer refused to

negotiate regarding carrier change).  More specifically, in Matter of Rockaway Borough Board of Education, P.E.R.C. 2010-9, 35 N.J.P.E.R. ¶ 102, 2009 NJ PERC LEXIS 263, at *9 (2009), where the employer contested an arbitrator's order of a reimbursement remedy similar to the one at issue, PERC stated that it "kn[e]w of no statute or regulation that prohibit[ed]" such an award.

We recognize these agency decisions are not precedential, and Lakeland and Rockaway involved changes to a different State-administered health insurance program, while Pennsauken and Metuchen involved changes to another private health insurance provider.  We are persuaded, however, that PERC's prior decisions establish the agency has regularly ordered essentially the same remedy for violations of N.J.S.A. 34:13A-5.4(a)(5) for several decades.

We find further support in Borough of East Rutherford, 213 N.J. at 193-94, where our Supreme Court affirmed the imposition of a reimbursement award by a PERC arbitrator.  There, the PBA employees were enrolled in the SHBP, and under their negotiated contract were required to pay a $5.00 co-payment for doctor office visits.  Id. at 193.  While that contract was still in effect, the SHBC increased the co-payment to $10.00, and the Borough passed that increase to the PBA members.  Ibid.  After the employees filed a grievance seeking reimbursement for the difference between the co-payment amounts, the Borough

28

filed a scope-of-negotiations petition with PERC, arguing reimbursement would run afoul of the SHBP's authority to design insurance plans and set rates and costs. Id. at 196. PERC sent the matter to arbitration stating, even if the arbitrator found a contractual violation, she could not order the Borough to continue the previous co-payment levels because the SHBC had exercised its authority to set higher co-payments. Id. at 197.

In her decision, the arbitrator noted there was a clause in the PBA contract stating that any change in insurance benefits "shall result in equal or better coverage," and found it was of no moment that the Borough was not responsible for the change in co-payments. Id. at 198. The Borough filed an action in the Law Division, and the trial court vacated the arbitrator's award, finding it improperly "return[ed] the co-payment to $5" in violation of the SHBC's authority. Id. at 199-200.

We reversed. Borough of East Rutherford v. East Rutherford PBA Loc. 275, No. A-5310-09 (July 18, 2011) (slip op. at 16). Because the employees were required to pay the amount ordered by the SHBC at point-of-service, we concluded the arbitrator's order was in line with the SHBP's uniformity requirement. Id. at 14-15. Accordingly, the reimbursement award "had no fiscal impact on the SHBP." Id. at 15.

A-3809-22

The Supreme Court affirmed, finding under the plain language of the PBA contract, an increased co-payment did not comply with the requirement to maintain insurance benefits at the same level. Borough of East Rutherford, 213 N.J. at 204. The Court noted PERC arbitrators "have the ability in appropriate circumstances to award make-whole monetary damages for certain contract violations." Id. at 205. Of particular relevance to the present matter, the Court found reimbursement did not "clearly violate[] or undermine[] implementation of the SHBP" primarily because employees were required to make the $10.00 co-payment to health care providers at the time of service, "thus meeting the literal SHBP requirement of a co-payment of $10.00 at the time of each doctor visit." Id. at 206.

Accordingly, we are persuaded PERC's reimbursement remedy here was proper. Similar to the CNA at issue in Borough of East Rutherford, the CNA between the County and FOP 106 was contravened by a change in the level of insurance benefits enjoyed by covered employees. See id. at 194-96. Unlike Borough of East Rutherford, where the change was occasioned by a revision in the governing statute over which the employer had no control, see id. at 207-08, here the County voluntarily chose not only to move its employees to the SHBP, but to do so without engaging in proper negotiations with FOP 106. The

County's actions violated N.J.S.A. 34:13A-5.4(a)(5), and PERC was authorized to craft a remedy to make affected employees whole. Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. at 336.

We further conclude the remedy PERC ordered does not run afoul of the SHBC's statutory authority, for the same reasons articulated by the Court in Borough of East Rutherford. 213 N.J. at 206-07. Among other increased costs, employees have been and still will be expected to pay the co-payments for doctor visits, treatments, and prescription drugs the SHBP plans require. There is thus no fiscal impact to the SHBP, which will continue to receive payments for the amounts assessed under its plan.

Although reimbursement at the time of service is inappropriate and could affect utilization of services and raise the SHBP's costs, that is not what PERC ordered here. Rather, reimbursement will not occur until an employee makes a claim with FOP 106 and that claim is forwarded to the County for evaluation and payment. Indeed, as PERC noted in its decision, it has been years since FOP 106 and PBA 382 employees were moved to their new insurance plans and, presumably, they have utilized services without knowing whether or when they would ever be reimbursed. Accordingly, there is little risk – or proof – that employees have been overusing their health insurance during that time. See

31

Borough of East Rutherford, 213 N.J. at 206 n.4 (noting the arbitrator's "award had no effect on PBA members' conduct" because "[t]he employees were required to pay the enhanced co-payment without knowledge of the outcome to the arbitration").

Nor are we persuaded that the SHBC's prior declaratory ruling in this matter foreclosed PERC from ordering reimbursement. The SHBC expressly stated the question of whether an unfair labor practice occurred was for PERC to decide and that PERC was the body that should craft a remedy if such a violation were found. Although the SHBC stated "modification" of an SHBP plan via reimbursement was impermissible, no plan was modified here.

Finally, we reject the County's argument that the level of reimbursement due FOP 106 employees should be "offset" by the value of other, improved health benefits the employees may now enjoy with the SHBP. Again, we are persuaded by PERC's prior decisions.

For example, in Borough of Metuchen, 1984 NJ PERC LEXIS 124, at *6-7, PERC noted, in certain situations, the plans available from the employer's new chosen insurance carrier offered greater benefits than those of the former carrier. However, PERC disagreed with the employer that losses suffered by some union members should be "set-off" by the gains that other members would

receive.  Id. at *11-12.  PERC thus ordered the employer to reimburse member employees "for any financial loss actually incurred due to the change in health insurance" carriers.  Id. at *15.

Similarly, in Township of Pennsauken, 1987 NJ PERC LEXIS 571, at *7-8, PERC rejected the public employer's argument that reimbursement was inappropriate because the change it made to its insurance carrier resulted in a plan that provided the same or better benefits "on balance."  PERC found the employer's CNA "d[id] not clearly give [it] an 'on balance' option," and that because some benefits were reduced, an unfair labor practice had occurred.  Ibid.

Moreover, in In re Township of Union, P.E.R.C. No. 2002-55, 28 N.J.P.E.R. ¶ 33070, 2002 NJ PERC LEXIS 119, at *15-16 (2002), PERC commented that if an employer had negotiated a contract providing it could unilaterally change insurance to an "equivalent" or "substantially equivalent" health plan, it could have argued its change to a plan where some benefits were better and some were worse was not subject to negotiation with employee units. However, because its contract obligated it to maintain "at least equal" benefits, this argument failed.  Ibid.

Similarly, in the present matter, the CNA expressly permitted the County to change insurance carriers "as long as the [new] benefits [we]re not less than

A-3809-22

those [then] provided by the County." The CNA contained no "equivalent" or "substantially equivalent" language.

Further, New Jersey courts generally have observed a remedy for an unfair labor practice may require "extra" payments or reimbursement to aggrieved employees. For example, in State v. International Federation of Professional & Technical Engineers, Local 195, 169 N.J. 505, 537-38 (2001), the Supreme Court concluded PERC could award back pay to employees who were improperly denied overtime, even though other individuals already were paid to do the work during the disputed hours. The Court stated the "sanctity of the contract" between a public employer and its employees "eclipse[d] the financial concern" that the employer "may have to pay twice." Id. at 538.

This emphasis on fairness to employees stems from the Court's recognition "that making employees whole for their actual economic losses attributable to the commission of an unfair labor practice 'is part of the vindication of the public policy which [the agency] enforces.'" Galloway I, 78 N.J. at 11 (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197 (1941)).

In Galloway I, the Supreme Court recognized that denying PERC the ability to award a particular remedy "where that remedy is necessary to cure the effects of an unfair practice would substantially thwart the legislative goal of

34

promoting peaceful public employment labor relations." Id. at 16. The Court explained "[p]ublic employees victimized by unfair practices committed by employers . . . could not truly be made whole" if PERC's remedial powers lacked "teeth" with a "deterrent effect" more forceful than a simple cease and desist order. Ibid. Accordingly, depriving PERC the authority to order monetary sanctions for unlawful conduct would deprive it "an effective tool in vindicating the public employees' rights secured by the [EERA] and thereby tend to nullify the deterrent aspect of its remedial authority." Ibid.

Although Galloway I concerned an award of back pay rather than health insurance costs, id. at 5, we are persuaded the same rationale applies here. The record supports PERC's decision that the County failed to engage in proper negotiations before changing carriers. In the interest of deterring such behavior, PERC's remedy provides "teeth" to the agency's unfair practice finding. Conversely, permitting the County to "offset" the differences in costs could incentivize public employers to violate their contracts with employees without negotiations, provided some aspects of the new insurance carrier's policies were better. We conclude PERC's imposition of a reimbursement remedy without an "offset" was not arbitrary, capricious, or unreasonable, and fully supported by the record. See R. 2:11-3(e)(1)(D).

A-3809-22

To the extent not addressed, the County's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION