834 A.2d 1037 (2003)
364 N.J. Super. 128
Gerald WINSLOW, Plaintiff-Appellant,
v.
CORPORATE EXPRESS, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 9, 2003.
Decided November 5, 2003.
*1040 Earp Cohn, Westmont, for appellant (Edward F. Borden and Kristin J. Telsey, on the brief).
Reed Smith, Newark, for respondent (Anthony J. Laura and Greg A. Dadika, on the brief).
Before Judges SKILLMAN, WELLS and FISHER. *1038
*1039 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The question presented by this appeal is whether an employee has a viable cause of *1041 action against an employer for reducing his compensation by changing the method of calculating sales commissions without prior notice. We conclude that defendant employer may be liable for a violation of the Wage Payment Law, N.J.S.A. 34:11-4.1 to -4.14, breach of contract and common-law fraud for unilaterally reducing the commissions paid to its sales representatives without prior notice.
Defendant is a distributor of office supplies with regional headquarters in Whippany. Defendant employed plaintiff as a sales representative in New Castle, Delaware, from August 1996 until February 2000. During the first two years of his employment, plaintiff was paid a flat salary, but beginning in August 1998 he was compensated solely on a commission basis. The terms of plaintiff's employment were never memorialized in a written contract.
Plaintiff's commissions were determined on the basis of defendant's "gross profits." According to plaintiff, at the commencement of his employment as a commission sales representative, defendant calculated its "gross profits" on the basis of the "actual costs" of the products he sold. However, sometime in the spring of 1999, without prior notice to plaintiff or its other sales representatives, defendant changed its method of calculating commissions by adding a "load" factor to its actual costs, which reflected an assumed cost for overhead. Plaintiff did not become aware of this change until he received his commission check and accompanying statement sometime after the change went into effect. According to plaintiff, this change resulted in a significant decrease in the commissions paid to him and the other sales representatives. Plaintiff subsequently terminated his employment with defendant and brought this action.
Plaintiff's complaint asserted claims for a violation of the Wage Payment Law, breach of contract, common law fraud, violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -109, conversion, unjust enrichment, and a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2. At an early stage of the litigation, the trial court granted defendant's motion to dismiss plaintiff's CFA and RICO claims. After substantial discovery,[1] defendant filed a motion for a summary judgment dismissing plaintiff's remaining claims. The trial court granted the motion and entered an order dismissing plaintiff's complaint. The order also provided that plaintiff was "disqualified from acting as class representative."
On appeal, plaintiff challenges the dismissal of all counts of his complaint. We reverse the dismissal of plaintiff's Wage Payment Law, breach of contract and common law fraud claims and the ruling that plaintiff is disqualified from acting as class representative. We affirm the dismissal of plaintiff's other claims.

I
The section of the Wage Payment Law relevant to plaintiff's claim is N.J.S.A. 34:11-4.6(b), which provides in pertinent part that "[e]very employer shall... [n]otify his employees of any changes in the pay rates ... prior to the time of such changes." N.J.S.A. 34:11-4.1(c) defines the "wages" subject to this provision as including "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a ... commission basis."[2] Consequently, *1042 the Wage Payment Law requires an employer to give advance notice to any employee paid on a commission basis of any change in the method by which his or her commissions are calculated.
Defendant argues that it complied with the Wage Payment Law by providing plaintiff with a written "commission schedule" which set forth a sliding scale of commission rates based on the "gross profit" on the sale of particular items. However, the evidence presented on defendant's motion for summary judgment indicates that when defendant first employed plaintiff on a commission basis, it construed "gross profit" to mean the difference between the actual cost and sales price of its products, but it subsequently redefined the term to mean the difference between the "loaded" cost and sales price, thus reducing plaintiff's commissions. Consequently, defendant was required to notify plaintiff and its other sales representatives of this "change[] in the pay rate" before putting it into effect. N.J.S.A. 34:11-4.6(b).
Furthermore, plaintiff may maintain a private cause of action for this alleged violation of the Wage Payment Law. N.J.S.A. 34:11-4.7 provides in relevant part:
It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act.... [E]ach and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State.
It could be argued that the right N.J.S.A. 34:11-4.7 confers on an employee to maintain a private cause of action against his or her employer for "any agreement in violation of [the Wage Payment Law]" does not extend to a violation of N.J.S.A. 34:11-4.6(b), because this section prohibits an employer from failing to notify its employees of any "change[] in... pay rates" and thus does not involve an "agreement" between the employer and its employee. However, we do not perceive any reason to accord N.J.S.A. 34:11-4.7 this kind of restrictive, literal reading. "[S]tatutes are to be read sensibly rather than literally[,]" Schierstead v. City of Brigantine, 29 N.J. 220, 230, 148 A.2d 591, 596 (1959), and if a literal interpretation will not achieve the evident legislative purpose, "the words used may be expanded or limited according to the manifest reason and obvious purpose of the law." Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339, 342 (1956). There is no significant difference between a violation of the Wage Payment Law involving an employer's "agreement" with its employees regarding wages and a violation involving an employer's unilateral act, such as a reduction in the rate of compensation without giving prior notice to the employees. Indeed, in view of the general inequality of bargaining position between employers and employees, it may be assumed *1043 that most employment agreements which violate the Wage Payment Law are "agreements" in name only, and in reality involve terms the employer imposes upon the employees.
Furthermore, even in the absence of a statutory provision such as N.J.S.A. 34:11-4.7 which expressly authorizes a private cause of action, our courts have readily found an implied private right of action in statutes enacted to protect employees from wrongful conduct by employers. Thus, in Peper v. Princeton Univ. Bd. of Trustees, 151 N.J.Super. 15, 23, 376 A.2d 535, 539 (App.Div.1977), rev'd on other grounds, 77 N.J. 55, 389 A.2d 465 (1978), we concluded, prior to the 1979 amendment to N.J.S.A. 10:15-13, L. 1979, c. 404, § 1, which expressly authorized a private cause of action for violations of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -48, that an employee could maintain a private action for a violation of the LAD even though the statute then expressly authorized only administrative remedies. Similarly, in Lally v. Copygraphics, 173 N.J.Super. 162, 173-82, 413 A.2d 960, 965-70 (App.Div.1980), aff'd, 85 N.J. 668, 670-71, 428 A.2d 1317, 1318-19 (1981), we concluded that an employee could maintain a private judicial action for a violation of N.J.S.A. 34:15-39.1 to -39.3, which prohibits an employer from retaliating against an employee for seeking workers compensation benefits, even though the statute expressly authorized only prosecution for a disorderly persons offense or administrative remedies for a violation of its proscription. Most relevant to this appeal, the Law Division concluded in Mulford v. Computer Leasing, Inc., 334 N.J.Super. 385, 394, 759 A.2d 887, 891 (Law Div.1999), that because "[e]mployees are the obvious special beneficiaries of the [Wage Payment Law]," this statute should be read to "impliedly confer[] on employees a private right of action in court against employers ... to protect and enforce their rights thereunder."
We agree with the Law Division's conclusion in Mulford that an implied private right of action could be found in the Wage Payment Law even in the absence of express statutory authorization. However, there is no need to rest plaintiff's right to pursue his Wage Payment Law claim on that basis, because N.J.S.A. 34:11-4.7 expressly authorizes a private right of action, and this section cannot be reasonably construed to restrict that authorization to circumstances where an employer has entered into an agreement with an employee which violates the Wage Payment Law. Therefore, the trial court erred in dismissing plaintiff's Wage Payment Law claim.

II
We next consider plaintiff's breach of contract claim. An oral employment contract, such as plaintiff had with defendant, "may be formed by the existence of conditions, not only manifested by words, but also implied from the circumstances of employment." Troy v. Rutgers, 168 N.J. 354, 365, 774 A.2d 476, 482 (2001). Where a court is called upon to resolve an ambiguity or uncertainty concerning the terms of such a contract, it may consider "custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221, 405 A.2d 393, 400 (1979). One form of conduct which may manifest the parties' intent is a course of dealing that establishes "a common basis of understanding for interpreting their expressions and other conduct." Restatement (Second) of Contracts § 223(1) (1981).
Plaintiff alleges that the prevailing practice in the office supply industry is to calculate the gross profits upon which a *1044 sales representative's commissions are determined on the basis of actual costs, without adding a "load" factor, and thus this industry practice was an implied term of his employment contract. Defendant responds that plaintiff was aware that "loads" are sometimes added to actual costs in determining gross profits, because the office supply company he owned before becoming employed by defendant used loads to determine gross profits, and plaintiff admits that when Nick Schmidt, defendant's Division President in its New Castle, Delaware office, first employed him as a commission salesman, they had no discussion concerning the method by which his commissions would be calculated.
However, there is no need to decide whether the alleged industry practice of calculating gross profits on the basis of actual costs could be found to constitute an implied term of plaintiff's employment contract, because plaintiff's commissions were in fact calculated on this basis from the time of his initial employment as a commission sales representative in August 1998 until sometime in the spring of 1999. Consequently, even without consideration of general industry practice, a trier of fact could find that in the absence of a definite agreement between the parties regarding the method of calculation of commissions, this course of dealing established their agreement concerning the method by which plaintiff's commissions would be calculated. See Kearny PBA Local # 21, supra, 81 N.J. at 221, 405 A.2d at 399-400.
Because plaintiff was an at-will employee, defendant of course remained free to change the method by which plaintiff's commissions were calculated. Mita v. Chubb Computer Servs., 337 N.J.Super. 517, 526, 767 A.2d 989, 994 (App.Div. 2001). However, defendant could only make such a change prospectively, after giving plaintiff prior notice that would afford him an opportunity to decide whether he wished to continue working at a reduced rate of compensation. See Nolan v. Control Data Corp., 243 N.J.Super. 420, 430-32, 579 A.2d 1252, 1257-58 (App. Div.1990). A trier of fact could find that the retroactive application of the new method of calculating commissions to reduce the commissions plaintiff had already earned constituted a breach of the terms of the employment contract established by the parties' prior course of dealings. Therefore, the trial court erred in dismissing plaintiff's breach of contract claim.

III
A cause of action for common-law fraud has five elements:
(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.
[Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997).]
The "[d]eliberate suppression of a material fact that should be disclosed" is viewed as "equivalent to a material misrepresentation (i.e., an affirmative misrepresentation)," which will support a common law fraud action. New Jersey Econ. Dev. Auth. v. Pavonia Restaurant, Inc., 319 N.J.Super. 435, 446, 725 A.2d 1133, 1139 (App.Div.1998).
Initially, we reject defendant's argument that plaintiff is foreclosed from pursuing a common law fraud claim because his complaint alleged an "affirmative misrepresentation" rather than "deliberate suppression" of information concerning the change in defendant's method of calculating its sales representatives' commissions. *1045 Our courts take a liberal approach concerning the amendment of pleadings, see Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57, 713 A.2d 411, 420-21 (1998), and even without an amendment, "a `deficient' complaint that omits a specific legal theory may be remedied at trial by showing the appropriate proofs for the omitted theory." Teilhaber v. Greene, 320 N.J.Super. 453, 466, 727 A.2d 518, 525 (App.Div.1999) (emphasis added). It follows a fortiori that such a deficiency may be remedied at a pretrial stage, such as a motion for summary judgment. The deposition testimony of plaintiff and Gregory Paci indicated that the actual basis for plaintiff's fraud claim was not an "affirmative misrepresentation" but rather the "deliberate suppression" of information concerning defendant's method of calculating its sales representatives' commissions. Consequently, defendant had ample notice of the factual foundation and legal theory of plaintiff's common law fraud claim before filing its motion for summary judgment.
Paci's deposition testimony provided a sufficient foundation for plaintiff's common law fraud claim to require denial of defendant's motion for summary judgment as related to that claim. According to Paci, sometime in the spring of 1999, he attended a meeting called by the Division President, Nick Schmidt, who told Paci and Dan Ritchie, the sales managers in the New Castle Office, that "he had gotten word that our commission structure was going to change," and that this change would have a substantial impact upon some sales representatives' commissions. Paci said he wanted to inform the sales representatives working under him of this change, but Schmidt told him, "let's wait and see[,] don't say anything." Paci then had a "heated debate" with Schmidt and Ritchie as to whether they had an obligation to inform the sales representatives about the impending change. However, Schmidt refused to relent and instructed Paci to "wait a month" to see how drastically the change affected the level of commissions. When the sales representatives received their next commission statements, they came to Paci and asked for an explanation of the reduction in their commissions. Paci then told the sales representatives about the change in the method of calculation.
Paci's testimony could support findings that Schmidt deliberately failed to disclose the change in the method of calculation of the commissions paid to defendant's sales representatives, that his intent in withholding this information was to induce the sales representatives to continue working with the expectation that they would receive the same level of commissions as in the past, that the sales representatives reasonably assumed, in the absence of contrary notice from defendant, that their compensation would continue to be determined on the same basis, and that they suffered damages as a result of the unannounced retroactive reduction in their commissions. Such findings could support the imposition of liability upon defendant for common law fraud. See Gennari, supra, 148 N.J. at 610, 691 A.2d at 367-68.

IV
Plaintiff's other claims are clearly without merit and do not warrant extended discussion.
The Consumer Fraud Act (CFA) prohibits certain fraudulent practices "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. Plaintiff's fraud claim against defendant did not involve the purchase of merchandise. Instead, plaintiff was employed as a sales representative to promote the sale of defendant's merchandise. Consequently, plaintiff's relationship *1046 with defendant was not governed by the CFA but rather by the myriad of statutory provisions designed to protect employees, including the section of the Wage Payment Law plaintiff relies upon in support of the claim discussed in section I of this opinion.
The Racketeer Influenced and Corrupt Organizations Act (RICO) provides in pertinent part:
It shall be unlawful for any person who has received any income or derived, directly or indirectly from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce....
[N.J.S.A. 2C:41-2(a).]
The Act defines "racketeering activity" as any one of the criminal offenses enumerated in N.J.S.A. 2C:41-1a(1), including "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C." N.J.S.A. 2C:41-1a(1)(o). Although the evidence presented in opposition to defendant's motion for summary judgment is sufficient to support a claim for common-law fraud, we perceive no basis for concluding that defendant's change in the method of calculating its salesmen's commissions would support a finding of a violation of any of the criminal offenses proscribed by chapter 21 of Title 2C or any of the other offenses set forth in N.J.S.A. 2C:41-1a(1). Therefore, the trial court correctly dismissed plaintiff's civil RICO claim.
The failure of a party to a contract to pay the full contract price is simply a breach of the contract and thus does not constitute a conversion of the property of the other party to the contract. See W. Page Keeton, et al., Prosser & Keeton on Torts § 1 (5th ed. 1984).
A party who confers a benefit upon another party outside the framework of an express contractual relationship may seek recovery for unjust enrichment on the basis of a quasi-contractual obligation. See Caputo v. Nice-Pack Prods., Inc., 300 N.J.Super. 498, 504, 693 A.2d 494, 497 (App.Div.1997). However, plaintiff had an oral employment contract with defendant, under which he may pursue an action for breach based on defendant's alleged failure to pay the full amount of commissions established by the parties' prior course of dealings. In light of this express contract, there is no basis or need for plaintiff to pursue a quasi-contractual claim for unjust enrichment.

V
Finally, we address the trial court's ruling that plaintiff was "disqualified from acting as class representative in this matter." Initially, we note that this ruling was unnecessary in light of the court's grant of summary judgment dismissing plaintiff's claims. See Blecker v. State, 323 N.J.Super. 434, 437 n. 3, 733 A.2d 540, 541 n. 3 (App.Div.1999). But in light of our partial reversal, this ruling must now be reviewed.
The court's ruling that plaintiff was disqualified from acting as a class representative was based on the fact that he previously owned an office supply business and thus presumably had greater knowledge of practices in the industry, including loaded costs, than other potential class representatives. However, plaintiff's only viable claims, as determined in this opinion, are predicated on defendant's unilateral change in the method of calculation of its sales representatives' commissions. Plaintiff's situation, as relates to defendant's failure to give advance notice of this *1047 change, is no different from that of any other sales representative who failed to receive such notice from defendant. Therefore, we reverse the court's determination that plaintiff is disqualified from acting as a class representative.
Because the trial court determined that plaintiff was not a proper class representative, it made no determination whether his complaint satisfied the other tests for class certification set forth in Rule 4:32-1(b). Consequently, the trial court should determine plaintiff's motion for class certification in light of those requirements. We note that additional discovery may be required before this determination can be made.
Accordingly, we reverse the parts of the summary judgment dismissing plaintiff's Wage Payment Law, breach of contract and common law fraud claims and the ruling that plaintiff is disqualified from acting as class representative. We affirm the order in all other respects.
NOTES
[1] It is unclear whether discovery had been completed when this motion was filed.
[2] Because plaintiff's office was located in Delaware, there may be a question whether the New Jersey Wage Payment Law governed his employment. See N.J.S.A. 34:11-4.1(a). However, neither party has briefed the issue. Moreover, the record does not indicate where plaintiff performed his services as a sales representative, which may be relevant to a determination of the applicability of New Jersey law. In any event, even if the New Jersey Wage Payment Law were inapplicable, Delaware has a similar wage payment law. See Del.Code Ann. Title 19 § 1108(2) (2000) ("It shall be the duty of every employer of over 3 employees to ... [n]otify each employee in writing or through a posted notice ... of any reduction in the regular rate of pay prior to the time of such reduction[.]").