NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2715-23

DARLENE SANDERS,

     Plaintiff-Appellant,

v.

THE LEVARI GROUP, LLC,
d/b/a FIRST CHOICE FREEZER,

     Defendant-Respondent.

---

> **APPROVED FOR PUBLICATION**
>
> **May 26, 2026**
>
> **APPELLATE DIVISION**

Argued January 29, 2026 – Decided May 26, 2026

Before Judges Marczyk, Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0196-23.

Joshua S. Boyette argued the cause for appellant (Swartz Swidler, LLC, attorneys; Joshua S. Boyette, on the briefs).

Andrew Marra argued the cause for respondent (Biancamano & Di Stefano, PC, attorneys; Rachel K. Hall and Andrew Marra, on the brief).

Marie Cepeda Mekosh, Deputy Attorney General, argued the cause for amicus curiae Attorney General of the State of New Jersey (Jennifer Davenport, Acting Attorney General, attorney; Stephen Ehrlich,

Deputy Solicitor General, of counsel; Viviana M. Hanley and Marie Cepeda Mekosh, Deputy Attorneys General, on the brief).

The opinion of the court was delivered by

PUGLISI, J.A.D.

Plaintiff Darlene Sanders appeals from two Law Division orders dismissing her claims against defendant The Levari Group, LLC, d/b/a First Choice Freezer. At issue are certain provisions in the Cannabis Regulatory, Enforcement Assistance, and Market Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, which prohibit an employer from refusing to hire an individual because that person has tested positive for cannabinoid metabolites. As a matter of first impression, this case asks whether CREAMMA provides that individual a private right of action against the employer for allegedly violating these prohibitions.

For the foregoing reasons, we conclude the answer is yes. We therefore reverse the orders dismissing plaintiff's claims based on CREAMMA, negligence, invasion of privacy, and breach of contract, and remand for further proceedings. However, we affirm the order dismissing plaintiff's common law claim under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980).

I.

In November 2020, the New Jersey Constitution was amended to legalize recreational cannabis use by individuals over twenty-one years of age, effective January 2021. N.J. Const. art. IV, § 7, ¶ 13. The amendment states the manufacture, sale, and consumption of cannabis by such individuals "shall be lawful and subject to regulation by the Cannabis Regulatory Commission [(CRC)]."[1] Ibid.

On February 22, 2021, the Legislature enacted two sets of provisions relevant here, "to regulate the newly legalized activity and achieve the constitutional amendment's public policy goals." State v. Gomes, 253 N.J. 6, 24 (2023) (quoting N.J. Div. of Child Prot. & Perm. v. D.H., 469 N.J. Super. 107, 128 (App. Div. 2021)). First, CREAMMA "adopt[ed] a new approach to . . . marijuana policies by controlling and legalizing a form of marijuana, to be referred to as cannabis, in a similar fashion to the regulation of alcohol." N.J.S.A. 24:6I-32(a). Second, amendments to the criminal code, L. 2021, c. 19, modified certain sections to: decriminalize recreational cannabis use and

---

[1] The Legislature established the CRC in 2019 to oversee New Jersey's medical cannabis program under the Jake Honig Compassionate Use Medical Cannabis Act (CUMCA), N.J.S.A. 24:6I-1 to -30. Prior to the enactment of CUMCA, the CRC's functions were carried out by the Department of Health under the New Jersey Compassionate Use Medical Marijuana Act, L. 2009, c. 307. See N.J.S.A. 24:6I-24.

possession; amend provisions concerning pretrial detention and conditions of probation and parole; and establish an expungement process for certain prior cannabis-related convictions.

N.J.S.A. 24:6I-32 enumerates the Legislature's findings and declarations, explaining CREAMMA's purpose to: control and legalize cannabis for adults; prevent the sale or distribution of cannabis to persons under age twenty-one; eliminate issues caused by the unregulated cultivation and sale of marijuana and divert sales from such illicit enterprises; free up law enforcement resources previously devoted to marijuana possession offenses; and provide support for substance use disorder treatment programs. N.J.S.A. 24:6I-32(n) declares "[a] marijuana arrest in New Jersey can have a debilitating impact on a person's future, including consequences for one's job prospects, housing access, financial health, familial integrity, immigration status, and educational opportunities," supporting CREAMMA's purpose to mitigate or eliminate such impacts. Our Supreme Court determined the "litany of findings" in N.J.S.A. 24:6I-32 "reflect a clear legislative intent to construe CREAMMA . . . robustly so as to achieve [its] remedial purposes." Gomes, 253 N.J. at 33.

CREAMMA expanded the scope and duties of the CRC, bestowing on it "all powers necessary or proper to enable it to carry out [its] duties, functions, and powers" set forth in the statute. N.J.S.A. 24:6I-34(a). The CRC's

"jurisdiction, supervision, duties, functions, and powers . . . extend to any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within this State." Ibid. Its statutory "duties, functions, and powers" related to the recreational use of cannabis include: regulating all aspects of the cannabis industry; issuing, revoking, and suspending licenses to engage in that industry; adopting regulations necessary to carry out CREAMMA's "intent and provisions"; regulating the advertisement of cannabis products; and regulating the use of cannabis for "scientific, pharmaceutical, manufacturing, mechanical, industrial, and other purposes." N.J.S.A. 24:6I-34(b).

The CRC also has a duty to "investigate and aid in the prosecution of every violation of the statutory laws of this State relating to cannabis and cannabis items and to cooperate in the prosecution of offenders before any State court of competent jurisdiction." N.J.S.A. 24:6I-34(b)(3). The CRC's website clarifies it "imposes fines or other sanctions on licensed cannabis business[es] that violate regulations," but "does not perform any law enforcement duties or regulate unpermitted or unlicensed entities in any way."[2]

---

[2] Information Hub FAQs – The Commission, Cannabis Regul. Comm'n, https://www.nj.gov/cannabis/resources/faqs/commission/ (last visited May 13, 2026).

The CRC's statutory role is reflected in its regulations, N.J.A.C. 17:30-20.1 to .10, which establish its procedures to monitor licensed entities for violations of CREAMMA and related regulations. N.J.A.C. 17:30-20.5, titled "Enforcement action and sanctions for noncompliance," states: "In response to a violation of any provision of [CREAMMA] or [these rules], the [CRC] is authorized to take enforcement action or impose sanctions upon a license holder," including "civil monetary penalties; suspension, revocation, non-renewal, or denial of a license; referral to State or local law enforcement . . . or any combination thereof." The CRC's regulations, however, do not contain any procedures for enforcement actions against unlicensed individuals or entities such as defendant.

The majority of CREAMMA regulates the cultivation, manufacture, and sale of cannabis for recreational use. N.J.S.A. 24:6I-35 to -46. Other sections concern the interplay of the recreational industry and CUMCA's medical cannabis program, N.J.S.A. 24:6I-47 to -48; and the establishment of a "Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Fund," N.J.S.A. 24:6I-50. Pertinent here, CREAMMA also includes anti-discrimination provisions protecting individuals who lawfully use cannabis. N.J.S.A. 24:6I-51(b)(1), -52(a)(1).

6

N.J.S.A. 24:6I-51, titled "Prohibition of discrimination against licensees and consumers; exceptions," states the "presence of cannabinoid metabolites in the bodily fluids of a person engaged in conduct permitted under [CREAMMA]," if that person is

> a student, tenant, or employee, other than as set forth in [N.J.S.A. 24:6I-52], shall not form the basis for refusal to enroll or employ or lease to or otherwise penalize that person, unless failing to [take such action] would put [a] school, employer, or landlord in violation of a federal contract or cause it to lose federal funding.
>
> [N.J.S.A. 24:6I-51(b)(1).]

If the person is a patient, the presence of the metabolite shall not result in the "denial of medical care," and if the person is a parent or legal guardian of a child, its presence shall not "form the sole or primary basis for any action or proceeding by the Division of Child Protection and Permanency." N.J.S.A. 24:6I-51(b)(2) to (3).

Under N.J.S.A. 24:6I-52(a)(1):

> No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, vape, aerosolize[,] or otherwise use cannabis items, and an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's

7

> bodily fluid from engaging in conduct permitted under [CREAMMA].

This section further permits an employer to require an employee to take a drug test randomly or under certain circumstances, and allows the employer to use the results "when determining the appropriate employment action concerning [an] employee, including, but not limited to dismissal, suspension, demotion, or other disciplinary action." Ibid.

Initially, Assembly Bill A. 21 (2021), introduced November 5, 2020, did not contain provisions concerning workplace drug testing. However, the bill stated nothing in CREAMMA would alter the rights of employers "to maintain a drug[-] and alcohol[-]free workplace or require an employer to permit or accommodate" employees using or being under the influence of cannabis in the workplace. This language was eventually codified at N.J.S.A. 24:6I-52(b)(1)(a).

The revised version of A. 21 (2021), reprinted on November 19, 2020, added the drug testing and employee impairment language eventually enacted. The Assembly Appropriations Committee Statement to the revised bill summarized the employee/prospective employee protections but did not detail the Legislature's reasoning or decision-making process concerning these provisions. This statement indicated the additions to N.J.S.A. 24:6I-52 were made to "clarify the balance between a general protection for a person to not

have an employer refuse to hire or employ" the individual based on the use of cannabis, "with an employer's authority to require an employee [to] undergo a drug test" under specific circumstances. Assemb. Appropriations Comm. Statement to A. 21, at 25 (Nov. 19, 2020). The legislative history is silent on the enforcement of the anti-discrimination provisions in N.J.S.A. 24:6I-52.

The same day it enacted CREAMMA, the Legislature amended the Opportunity to Compete Act, N.J.S.A. 34:6B-11 to -23. The added provision states an employer "shall not be permitted to, when making an employment decision, rely solely on, or require any applicant to disclose or reveal, or take any adverse action against any applicant for employment solely on the basis of, any arrest, charge, conviction, or adjudication of delinquency" of certain enumerated marijuana-related offenses. N.J.S.A. 34:6B-21(a). Any employer who violates this prohibition is liable for "a civil penalty . . . which shall be collectible by the Commissioner of Labor and Workforce Development in a summary proceeding pursuant to the 'Penalty Enforcement Law of 1999,' [N.J.S.A. 2A:58-10 to -12]." N.J.S.A. 34:6B-21(b). This penalty is "the sole remedy provided for violations of this section," ibid., and nothing in the provision "shall be construed as creating, establishing, or authorizing a private cause of action by an aggrieved person against an employer who has violated,

or is alleged to have violated, the provisions of this section," N.J.S.A. 34:6B-21(c).

## II.

In April 2023, plaintiff filed a complaint against defendant, alleging the company "subjected [her] to a pre-employment drug screening and then refused to hire [her] based on [her] recreational use of cannabis items." Her complaint alleges that on December 6 and 13, 2022, she interviewed for a customer service representative position with defendant. She was then offered the position and accepted.

The complaint stated, "as part of its standard hiring process," defendant "subjected [p]laintiff to a drug test." The test results "indicated that she had used cannabis items within the past [thirty] days." Plaintiff alleged she used cannabis "for recreational purposes" within that time frame but did not use cannabis the day of the drug test and "was not under the influence . . . at the time that she applied for employment with [d]efendant."

In early January 2023, plaintiff contacted defendant's human resources department, "inquiring about her start date." She alleged the company's representative "offered [her] the opportunity to submit to a repeat drug test within a week['s] time at [her] expense." Plaintiff did not retest because she

10

"did not have the funds."  Defendant then "rescinded [its] offer and refused to hire" her.

Count one of the complaint alleged defendant violated plaintiff's rights under CREAMMA "by refusing to hire her on the basis of her recreational use of cannabis items."  Count two alleged defendant's refusal to hire her based on her cannabis use contravened "clearly mandated public policy embodied by CREAMMA," and therefore violated New Jersey common law under Pierce, 84 N.J. at 72.

Plaintiff sought an order prohibiting defendant from "discriminating against employees or prospective employees based on their use of cannabis items."  She also demanded compensatory damages consisting of pay and benefits, lost past and future earnings, punitive damages, damages for emotional distress and pain and suffering, and attorneys' fees and costs.

In lieu of an answer, defendant moved to dismiss the complaint for failure to state a claim under Rule 4:6-2(e).  Plaintiff cross-moved for leave to file an amended complaint to add counts alleging breach of contract, negligence, and violation of privacy.  Specifically, proposed count three alleged:  defendant "made an offer of employment subject to [a] condition which [p]laintiff accepted, thereby forming a conditional employment contract"; defendant "was not lawfully permitted to condition its offer . . . on

[her not having] a positive cannabis test under New Jersey law"; and defendant's "failure to honor that contract due to the occurrence of an unlawful condition violated [its] covenant of good faith and fair dealing."  Proposed count four alleged defendant "had a duty not to discriminate against recreational marijuana users" as set forth in CREAMMA, "fail[ed] to follow that standard of care," and therefore was liable for negligence.  Proposed count five stated defendant "caused [p]laintiff to give up her right to privacy" regarding her bodily fluids because, had she known defendant would revoke its job offer "solely based on a positive test for cannabis," she would not have "allowed th[e] intrusion" of the drug test to occur.

After argument on the motions, the trial court opined plaintiff's remedy was "through the CRC and not the Superior Court."  However, it requested the parties submit supplemental information concerning whether the CRC provided "an actual avenue" to redress "these types of disputes."

At the argument following the submission of supplemental information, plaintiff's counsel averred the CRC had neither the procedure in place to address plaintiff's complaint nor the authority to do so.  The court, having reviewed the CRC's website, acknowledged the CRC did "not make it easy for an individual to seek relief for a violation of [CREAMMA] for something other than licensing issues," which was "unfortunate."  It found plaintiff was "a

12

member of a class . . . entitled to benefit from" CREAMMA's anti-discrimination provision but determined there was no evidence the Legislature meant to imply a private right of action to enforce that provision, particularly since it "g[a]ve the CRC the authority to create all . . . regulations and prosecute violations of [CREAMMA]." Thus, the court: dismissed plaintiff's CREAMMA and Pierce claims; denied amendment of the complaint to add negligence and invasion of privacy claims because they would be futile; and permitted amendment of the complaint to add the breach of contract claim.

Defendant subsequently moved to dismiss the amended complaint under Rule 4:6-2(e), arguing it had given plaintiff "a contingent offer of an at-will employment." Because plaintiff refused to comply with the repeat drug test, she "did not satisfy the conditions of the offer" and no contract ever "became effective" between the parties.

The court found if the "consideration" needed to form the contract was that plaintiff take a drug test, she did not fulfill this requirement because she failed to take a second test "simply because of funds." Because the second test was the additional consideration needed to "complete the offer," plaintiff's declination of the retest meant "the contract did not proceed, and thus, there was no breach of contract."

## III.

We review orders granting a motion to dismiss for failure to state a claim under Rule 4:6-2(e) de novo. Pace v. Hamilton Cove, 258 N.J. 82, 95-96 (2024). Such review is "limited to examining the legal sufficiency of the facts alleged on the face of the complaint," and, in determining whether dismissal under Rule 4:6-2(e) is warranted, the court should not concern itself with the plaintiff's ability to prove their allegations. Est. of Campbell v. Woodcliff Health & Rehab. Ctr., 479 N.J. Super. 64, 70-71 (App. Div. 2024) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). In doing so, we "giv[e] the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)). "[W]e must search the complaint 'thoroughly and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Robey v. SPARC Grp. LLC, 256 N.J. 541, 554 (2024) (quoting Baskin, 246 N.J. at 171) (internal quotation marks omitted).

"Nevertheless, 'if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed.'" Pace, 258 N.J. at 96 (quoting Dimitrakopoulos, 237 N.J. at 107). Thus, a

A-2715-23

motion to dismiss is only granted in the "rarest of instances." Printing-Mart Morristown, 116 N.J. at 771-72.

A.

Plaintiff argues the trial court erred in finding CREAMMA does not provide a private right of action to individuals like herself. She asserts this right is implied by the text and framework of CREAMMA as a whole, informed by the legislative history, and contends she has met all three prongs set forth in Cort v. Ash, 422 U.S. 66 (1975), for establishing a private right of action.

More specifically, plaintiff asserts: N.J.S.A. 24:6I-52 contains "rights-creating language"; the Legislature specifically granted the CRC certain powers but was deliberately silent on enforcement of CREAMMA's anti-discrimination provisions; and the absence of a private right of action would render these provisions "meaningless." She further argues a private right of action is consistent with CREAMMA's underlying purpose to "ensur[e] that recreational users of cannabis are not treated differently in terms of their civil rights and ability to participate in civic society, including employment."

The Attorney General, as amicus curiae, echoes plaintiff's contention the Cort factors have been met. It argues CREAMMA was intended to protect individuals from discrimination in hiring, and the Legislature did not empower

15

the CRC to helm any "alternative enforcement scheme." The Attorney General points out the Legislature did not preclude a private right of action by providing an exclusive remedy, as it did in N.J.S.A. 34:6B-21(c), passed the same day as CREAMMA.

In general, matters of statutory interpretation are reviewed de novo. Grillo v. State, 469 N.J. Super. 267, 274 (App. Div. 2021). A court's overriding goal of statutory interpretation is to "determine as best [it] can the intent of the Legislature, and to give effect to that intent." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 385 (App. Div. 2015) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)).

To ascertain legislative intent, the court must "begin with the statute's plain language and give terms their ordinary meaning." Mueller v. Kean Univ., 474 N.J. Super. 272, 283 (App. Div. 2022) (quoting State v. S.B., 230 N.J. 62, 68 (2017)). "It may also 'draw inferences based on the statute's overall structure and composition' to 'construe the meaning of the Legislature's selected words.'" Id. at 283-84 (quoting S.B., 230 N.J. at 68). "'If the Legislature's intent is clear on the face of the statute, then the "interpretative process is over."'" Id. at 284 (quoting S.B., 230 N.J. at 68). However, if the statute's language is ambiguous, the court may "resort to 'extrinsic interpretative aids, including legislative history' to determine the statute's

meaning." Malzberg v. Josey, 473 N.J. Super. 537, 546 (App. Div. 2022) (quoting State v. J.V., 242 N.J. 432, 443 (2020)). Ultimately, statutory language "should be . . . construed in a common-sense manner," and in a way that will not render any part of the enactment "superfluous." State in the Int. of K.O., 217 N.J. 83, 91 (2014).

N.J.S.A. 24:6I-51 and -52 do not expressly provide a private right of action for individuals seeking to redress an adverse employment decision based on their lawful use of cannabis. However, federal and New Jersey courts "have held that a statute that does not expressly create a private cause of action may, nonetheless, implicitly create one." Jarrell v. Kaul, 223 N.J. 294, 307 (2015).

In Cort, 422 U.S. at 78, the United States Supreme Court established the test to determine whether such a remedy exists. In adopting this test, our Supreme Court requires a court to consider:

> [1] whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; [2] whether there is any evidence that the Legislature intended to create a private cause of action under the statute; and [3] whether implication of a private cause of action in [a given] case would be "consistent with the underlying purposes of the legislative scheme."
>
> [In re Resol. of State Comm'n of Investigation, 108 N.J. 35, 41 (1987) (citation omitted) (quoting Cort, 422 U.S. at 78).]

"Subsequent cases have highlighted the various" <u>Cort</u> factors "to differing extents, but the primary goal has almost invariably been a search for the underlying legislative intent." <u>Jalowiecki v. Leuc</u>, 182 N.J. Super. 22, 30 (App. Div. 1981).

In <u>R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.</u>, 168 N.J. 255, 271 (2001), our Supreme Court noted, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." However, "courts have readily found an implied private right of action in statutes enacted to protect employees from wrongful conduct by employers." <u>Winslow v. Corp. Express, Inc.</u>, 364 N.J. Super. 128, 137 (App. Div. 2003).

As a key example, in <u>Peper v. Princeton University Board of Trustees</u>, 151 N.J. Super. 15, 22-26 (App. Div. 1977), <u>rev'd on other grounds</u>, 77 N.J. 55 (1978), we considered whether a plaintiff could sue an employer alleging sex-based discrimination in promotion decisions under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, which at the time did not yet explicitly provide such a right existed. We held there was "no question" the plaintiff, as an "employee within the intendment of the [LAD]," was meant to benefit from its prohibition on sex-based employment discrimination. <u>Id.</u> at 23. Although "pursuit of administrative relief from the Division on Civil

18

Rights might have been more appropriate and expeditious than direct resort to the court, [the] plaintiff was nevertheless entitled to invoke the Superior Court's concurrent jurisdiction over practices alleged to be in violation of the [LAD]." Ibid.

In Lally v. Copygraphics, 173 N.J. Super. 162, 181-82 (App. Div. 1980), we held an employee alleging retaliatory discrimination by an employer after filing a worker's compensation claim, in violation of N.J.S.A. 34:15-39.1 to .3, could "elect to pursue either a judicial or administrative remedy." The worker's compensation statutes, as they existed at the time, prohibited such discrimination and provided for fines, additional monetary penalties, and even incarceration for employers and their agents for violations. Id. at 166. An aggrieved employee was also entitled to restoration of employment and compensation for any loss of wages arising out of the discriminatory action. Ibid. In reversing the trial court's limitation of the plaintiff's recourse to a complaint in the Division of Worker's Compensation, we held that to fully execute the Legislature's intent to eradicate retaliatory discrimination, the plaintiff was entitled to pursue a remedy through a Superior Court action. Id. at 178-82.

The Supreme Court affirmed, noting a "common law action for wrongful discharge" would "effectuate statutory objectives and complement the

legislative and administrative policies which undergird the workers' compensation laws." Lally v. Copygraphics, 85 N.J. 668, 670-71 (1981). In so concluding, the Court commented: "If the Legislature had wanted to foreclose a judicial cause of action, it would have done so expressly." Id. at 671.

Although these cases pre-date the adoption of the Cort test in New Jersey, they nevertheless have been cited and followed in subsequent decisions where an implied private right of action has been found. Cf. Winslow, 364 N.J. Super. at 137-38 (concluding under the Wage Payment Law, N.J.S.A. 34:11-4.7, a private right of action existed for an employee whose commission rate was reduced without prior notice).

We address the Cort factors in turn. The first factor requires us to consider whether the statutory provision was intended to benefit a particular class of plaintiffs. In re State Comm'n of Investigation, 108 N.J. at 41. For a statute to create a private right of action, "its text must be 'phrased in terms of the persons benefited.'" Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002) (quoting Cannon v. Univ. of Chi., 441 U.S. 677, 692 n.13 (1979)).

Where the plaintiff is not the statute's intended beneficiary, this factor weighs against a private right of action. See R.J. Gaydos, 168 N.J. at 279 (insurance reform statute containing "consumer-oriented" language focused on

insuring "the motorists of this State" did not create a private right of action for an insurance agent claiming wrongful termination); In re State Comm'n of Investigation, 108 N.J. at 42 (statute governing disclosures of confidential information by the State Commission of Investigation (SCI) was not enacted to protect the targets of investigations, but the SCI itself); Jalowiecki, 182 N.J. Super. at 31 (statutory and regulatory scheme governing sewerage disposal was intended to "preserve the public health . . . for the community as a whole, not for any specific person or group of people who might be affected by" improper disposal).

On the other hand, where the statute is intended to benefit the plaintiff's class, the factor militates in favor of the plaintiff. See Boldt v. Correspondence Mgmt., Inc., 320 N.J. Super. 74, 77-78, 88 (App. Div. 1999) (patients who were overcharged for copies of their medical records in violation of administrative code were "clearly in the class to be protected by the regulations"); Parks v. Pep Boys, 282 N.J. Super. 1, 6, 12, 15 (App. Div. 1995) (family of a child who died after "huffing" freon could sue seller under a statute prohibiting the sale of such chemicals when the seller has reasonable cause to suspect they would be used to induce intoxication).

In light of the prevailing caselaw, we are persuaded the first Cort factor weighs in favor of plaintiff. Both N.J.S.A. 24:6I-51(b)(1) and -52(a)(1) do not

21

prohibit discriminatory actions generally; they specifically prohibit employment-related discrimination based on an individual's testing positive for cannabinoid metabolites. Thus, we conclude plaintiff, as a prospective employee whose job offer was allegedly rescinded after the potential employer discovered she tested positive for cannabinoid metabolites, is "one of the class for whose especial benefit the statute[s] w[ere] enacted." Cort, 422 U.S. at 78.

The second Cort factor requires consideration of whether there is any evidence the Legislature intended to create a private right of action for the special class found in the previous factor. In re State Comm'n of Investigation, 108 N.J. at 41. A court should be mindful "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." Cannon, 441 U.S. at 694. Thus, in situations where a statute clearly "has granted a class of persons certain rights," it is unnecessary to find definitive evidence of "an intention to create a private cause of action." Cort, 422 U.S. at 82. However, explicit evidence of a "purpose to deny such cause of action would be controlling." Ibid.

One consideration is whether a statute contains "'rights-creating' language." Gonzaga Univ., 536 U.S. at 287 (quoting Alexander v. Sandoval, 532 U.S. 275, 288-89 (2001)). "[W]here the text and structure of a statute provide no indication that [the Legislature] intends to create new individual

rights, there is no basis for a private suit . . . under an implied right of action." Id. at 286.

Although CREAMMA does not state employees or prospective employees "shall have the right" to use cannabis, N.J.S.A. 24:6I-51(b)(1) provides the use of cannabis "shall not form the basis for refusal to . . . employ . . . that person." Likewise, while N.J.S.A. 24:6I-52(a)(1) dictates "[n]o employer shall" take adverse action against a person "because that person does or does not . . . use cannabis items"—language that categorically applies to all persons—it also dictates "an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites" from engaging in the lawful use of cannabis. The Supreme Court held similar text—Title IX's proscription "no person shall" be discriminated against on the basis of sex by an educational institution—to be "rights-creating" language. Cannon, 441 U.S. at 694-703.

Another consideration when evaluating the second Cort factor is whether the Legislature provided an administrative remedy or other enforcement mechanism for the statute in question. Where the Legislature has made "express statutory provision for one form of proceeding," this "ordinarily implies that no other means of enforcement was intended." Sec. Inv. Prot. Corp. v. Barbour, 421 U.S. 412, 419 (1975).

Courts also consider the availability of an alternative remedy or enforcement proceeding for an aggrieved party. "Generally, [our] courts decline to grant relief when an adequate administrative remedy exists." Campione v. Adamar of N.J., Inc., 155 N.J. 245, 261 (1998).

Where the Legislature has vested an administrative agency with "exclusive primary jurisdiction, that agency may be the only forum in which a party initially may seek relief." Ibid.; see id. at 264-66 (no private right of action by casino patron identified as a "card counter" because the Casino Control Commission has broad powers to license, investigate, adjudicate, and punish regulatory violations); Castro v. NYT Television, 370 N.J. Super. 282, 292 (App. Div. 2004) (no private right of action where a statute provided right to file complaint with the Department of Health); Jarrell, 223 N.J. at 309 (no private right of action for violation of statutes requiring a physician to maintain liability insurance because enforcement is a matter for professional boards); R.J. Gaydos, 168 N.J. at 280 (no private right of action where violation of insurance statute is a matter of enforcement by the Department of Banking and Insurance); In re State Comm'n of Investigation, 108 N.J. at 44 (no private right of action where the Legislature "specifically provided a mechanism to ensure that the Attorney General [would] check violations of the duty of confidentiality imposed by" statute).

If, however, such jurisdiction has not been vested in an agency, "a plaintiff may still seek relief in the courts." Campione, 155 N.J. at 261; see also Boldt, 320 N.J. Super. at 87-88 (private right of action existed because regulations did not provide for an administrative remedy).

While the Legislature established an exclusive administrative remedy for a violation of N.J.S.A. 34:6B-21, which prohibits employment discrimination based on certain prior convictions for marijuana-related offenses, that amendment to the Opportunity to Compete Act does not demonstrate the Legislature intended to preclude a private right of action under CREAMMA. See Cannon, 441 U.S. at 711 ("The fact that other provisions of a complex statutory scheme create express [administrative] remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section.").

A third indicator of intent is whether the Legislature provided a private right of action in other related provisions. For example, in Touche Ross & Co. v. Redington, 442 U.S. 560, 571-72 (1979), the Court noted the provision at issue was "flanked by provisions of the [same] Act that explicitly grant private causes of action." It concluded "when Congress wished to provide a private damages remedy" for a violation of a provision within the greater statute, "it

25

knew how to do so and did so expressly." Id. at 572. No other sections of CREAMMA provide for a private right of action.

We are therefore persuaded the second Cort factor weighs in favor of plaintiff. N.J.S.A. 24:6I-51 and -52 do not contain an administrative remedy for those discriminated against in violation of its terms. CREAMMA does not explicitly authorize the CRC or any other State entity to enforce these provisions through prosecution, civil penalty, or any other consequence. The CRC is charged with regulating the cannabis industry, along with businesses and individuals holding licenses or permits to participate in the industry. Its authority is limited "to any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within this State." N.J.S.A. 24:6I-34. Under N.J.A.C. 17:30-20.5, the CRC may only impose sanctions for "a violation of any provision of [CREAMMA]" on a "license holder." Thus, there is no concern a private right of action to enforce CREAMMA's anti-discrimination provisions would infringe upon, or be duplicative of, agency action.

The third Cort factor asks whether a private right of action would be consistent with the underlying purposes of the legislative scheme. In re State Comm'n of Investigation, 108 N.J. at 41. If such a remedy would frustrate those purposes, it should not be implied, but where it is "necessary or at least

26                                                                          A-2715-23

helpful to [their] accomplishment," courts are "decidedly receptive to its implication." Cannon, 441 U.S. at 703; see also Parks, 282 N.J. Super. at 15 (allowing private remedy for individuals harmed by their misuse of dangerous chemicals against the seller of those chemicals "assures" the "effectiveness" of the statute restricting their sale by "alerting" sellers of potential consequences).

If private action is consistent with the legislative purpose, it may nevertheless be superfluous if there is a more efficient administrative means to achieve the legislative purpose. See Jalowiecki, 182 N.J. Super. at 32-33 (private action may deter violations of an environmental statute, but summary proceedings by the Department of Environmental Protection are more effective); Jarrell, 223 N.J. at 309 ("proactive" enforcement of insurance requirements for medical practitioners would not be served by a "reactive" course of "wait[ing] for a complaint by an injured patient that may never be filed"); Campione, 155 N.J. at 264 (allowing a private right of action regarding casino-related statutes and regulations "could dislocate the intricate regulatory structure governing a sensitive industry" and "introduce confusion where uniformity is needed").

We are persuaded the overall purpose of CREAMMA, and specifically N.J.S.A. 24:6I-51(b)(1) and -52(a)(1), would be served by a private right of action against an employer or potential employer that discriminates against an

27

employee or a candidate who tests positive for cannabinoid metabolite. Because CREAMMA does not provide for administrative enforcement, permitting a judicial remedy will not run afoul of or bypass any intricate regulatory structure. See R.J. Gaydos, 168 N.J. at 280-81; see also Campione, 155 N.J. at 264. Moreover, since no administrative remedy was authorized by statute, these anti-discrimination provisions would be meaningless and unenforceable absent an individual's right to sue for a violation.

While not raised by the parties, for the sake of completeness, we address N.J.S.A. 24:6I-55(a), titled "Limitations," which states: "The provisions of [CREAMMA] concerning the development, regulation, and enforcement of activities associated with personal use cannabis, as well as acts involving personal use cannabis or cannabis items, shall not be construed . . . [t]o amend or affect in any way any State or federal law pertaining to employment matters." The legislative history does not address the intent behind this provision. Read broadly, it may be construed as evincing the Legislature's intent to preclude a private right of action for a violation of CREAMMA's anti-discrimination provisions. However, statutory provisions are "not read . . . in isolation; we instead consider 'them in context with related provisions so as to give sense to the legislation as a whole.'" State v. Lopez-Carrera, 245 N.J. 596, 613 (2021) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

The remainder of N.J.S.A. 24:6I-55 clarifies CREAMMA shall not be construed to: amend or affect State or federal law pertaining to landlord-tenant matters; prohibit a federal grant recipient from prohibiting the manufacture, transportation, delivery, possession, or use of cannabis items as necessary to satisfy federal requirements for the grant; prohibit a federal contractor or applicant from prohibiting the manufacture, transport, distribution, delivery, possession, or use of cannabis items as necessary to comply with federal requirements of the contract; require a person to violate a federal law; or exempt a person from a federal law or obstruct the enforcement of a federal law. When CREAMMA was enacted, marijuana was an illegal substance under federal law. Thus, considered in context, we are persuaded this provision addresses the Legislature's intent to curtail CREAMMA's conflict with federal law or contractual requirements, and it does not foreclose a private right of action to enforce its anti-discrimination provisions. This interpretation harmonizes the legislation as a whole, consistent with its express purpose.

Having considered this guiding landscape of caselaw, we conclude the Legislature intended CREAMMA to provide a private right of action to enforce its anti-discrimination provisions embodied in N.J.S.A. 24:6I-51(b)

and -52(a).[3]  We therefore reverse the court's order dismissing count one of the complaint and remand for further proceedings.  On remand, defendant is not precluded from renewing its motion to dismiss the complaint, and our opinion should not be construed to predetermine whether plaintiff alleged sufficient facts to establish a violation of CREAMMA.

B.

Plaintiff argues the trial court erred by dismissing her common law claim under Pierce, 84 N.J. at 65.  She asserts her case is one of wrongful termination because defendant offered her a job, and she accepted, creating "an employment contract . . . which was rescinded/breached in violation of public policy."  Alternatively, she urges us to extend Pierce's holding to failure to hire cases, because defendant's actions involved "refusing to hire a protected class of individuals."  Plaintiff asserts "the public policy at issue," non-discrimination against cannabis users, "extend[s] to the pre-hire context," and thus Pierce should be applied to allow her to sue defendant under the common law.

---

[3]  We acknowledge the Third Circuit reached a contrary conclusion in Zanetich v. Wal-Mart Stores East, Inc., 123 F.4th 128, 136, 147 (3rd Cir. 2024). Although we "often look to the decisions of federal courts for guidance," our courts "are not bound by their decisions in respect of our own state law." Becker v. Baron Bros., 138 N.J. 145, 165 (1994).  We also note Zanetich exclusively examined N.J.S.A. 24:6I-52(a)(1), not N.J.S.A. 24:6I-51, in deciding this issue.

A-2715-23

Pierce permits an employee to bring a cause of action "for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Id. at 72. In recognizing this type of claim, the Court struck a balance by giving employees the security to "exercise their rights in accordance with a clear mandate of public policy" without fear of losing their jobs, while also affording employers the ability to discharge employees at will for any reason other than such an exercise of rights. Id. at 73.

Under Pierce, a wrongfully discharged employee "may maintain a cause of action in contract or tort or both," with a contract action being "predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy." Id. at 72. The "sources of public policy" that may support an employee's cause of action "include legislation; administrative rules, regulations or decisions; and judicial decisions." Ibid. "Absent legislation, the judiciary must define the cause of action in case-by-case determinations." Ibid.

The scope of Pierce is limited to wrongful discharge actions brought by employees. See MacDougall v. Weichert, 144 N.J. 380, 388-90 (1996) (explaining Pierce is limited to an employer-employee relationship); Sabatino v. St. Aloysius Par., 288 N.J. Super. 233, 240 (App. Div. 1996) (declining to

31

extend <u>Pierce</u> "to failure to hire or promote situations"); <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 149 (3d Cir. 2004) (noting "[t]he <u>Pierce</u> doctrine is about wrongful discharges").

Plaintiff's complaint alleges a failure to hire, not a wrongful discharge, and, therefore, the trial court correctly dismissed it as failing to state a claim under <u>Pierce</u>.  As an intermediate appellate court, we are bound by the contours of the Supreme Court's holdings and therefore decline to expand <u>Pierce</u> beyond the employer-employee relationship.

C.

Plaintiff also contends the trial court erred by denying her motion to amend the complaint to add claims for negligence and invasion of privacy. Regarding the negligence claims, she asserts that even if CREAMMA did not create a private right of action, it "created a duty of employers toward job applicants in how it conducts pre-employment drug testing," and defendant "violated that duty by failing to follow those standards."  She further asserts defendant's conduct resulted in a violation of her privacy, because she "submitted to a drug test under false pretenses, reasonably assuming that [d]efendant would comply with the law if she did so."

Motions for leave to amend pleadings should be "'granted liberally,' even if the ultimate merits of the amendment are uncertain."  <u>Prime Acct. Dep't v.</u>

Twp. of Carney's Point, 212 N.J. 493, 511 (2013) (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456 (1998)). The decision is "a matter addressed to the court's sound discretion." Johnson v. Glassman, 401 N.J. Super. 222, 247 (App. Div. 2008).

However, "[o]ne exception to that rule arises when the amendment would be 'futile,' because 'the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor.'" Prime, 212 N.J. at 511 (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)). Courts may deny leave to amend "when the newly asserted claim is not sustainable as a matter of law," since there is "no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted." Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997) (quoting Mustilli v. Mustilli, 287 N.J. Super. 605, 607 (Ch. Div. 1995)).

The record reflects the trial court denied the motion to amend because it found plaintiff's negligence and invasion of privacy claims were "just a renaming of" her CREAMMA claim. Given our reversal of the order dismissing the CREAMMA claim, we are constrained to also reverse the portion of the order denying amendment and remand for further proceedings. Again, our holding should not be construed to predetermine whether the

33

complaint alleges sufficient facts to state a claim for negligence or invasion of privacy.

D.

Plaintiff contends the trial court erred by finding no contract had been formed between the parties and dismissing her breach of contract claim. She asserts defendant made her a job offer, which she accepted, forming a contract with the condition she would provide "consideration" by taking a drug test. Plaintiff argues the consideration was not a condition precedent to formation, as defendant contends, but to performance.

Plaintiff avers she satisfied the condition by "passing" the test as to all substances considered illegal under New Jersey law. She argues defendant's requiring additional consideration—a second drug test, at her expense, on which she would test negative for cannabis—violated CREAMMA and formed a proper basis for a breach of contract claim.

The court interpreted plaintiff's allegations to indicate "the consideration may have been that . . . [plaintiff] take this drug test," and then defendant "asked her [to] take a second drug test," but the complaint was unclear "what the . . . purpose of that was. Other than [defendant] asked for as part of the original consideration to take a second test." The court found the request for the retest was "additional consideration," which defendant asked plaintiff "to

34

undertake to complete the offer . . . of the employment contract." Because plaintiff declined to take the second test, "the contract did not proceed, and, thus, there was no breach of contract."

Plaintiff's complaint does not detail what, if any, communications the parties had concerning the offer and conditions, and thus, it is unclear whether the drug tests were a condition precedent to the formation of the contract or to performance. Because the motion was brought under Rule 4:6-2(e), the court is limited to consideration of the allegations in the complaint, which do not shed any light on the reason defendant requested the second test. Accepting plaintiff's allegations as true and affording her all reasonable factual inferences, as we must at this stage, we are persuaded the court's dismissal of the breach of contract claim was premature. We therefore reverse that order and remand for further proceedings.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division